# Charles E. Hay v. The City of Springfield and The Capital Electric Company.

1. MUNICIPAL INDEBTEDNESS—*Excess of Constitutional Limit.*—The acceptance of a proposition by a city, while indebted, in excess of the constitutional limit, by which it will be able to acquire an electric light plant for the purpose of lighting its streets, and pay for the same out of its annual levy for lighting purposes, without in any way increasing its indebtedness, is legal and not in excess of its powers.

2. SAME—*When a Tax Payer can not Complain.*—The power of a city to light its streets includes the power to acquire by purchase or building, a plant for such purpose, and if this can be done by an accumulation from taxes within the power of the city to levy, without imposing unduly upon the tax payer, he can not be heard to object in a court of equity.

**Bill for an Injunction.**—Appeal from the Circuit Court of Sangamon County; the Hon. ROBERT B. SHIRLEY, Judge, presiding. Heard in this court at the November term, 1895. Affirmed. Opinion filed May 16, 1896.

H. S. GREENE, PALMER, SHUTT, DRENNAN & LESTER, CONKLING & GROUT, and LOUIS J. PALMER, attorneys for appellant.

E. S. ROBINSON, city attorney, J. C. SNIGG, and E. L. CHAPIN, corporation counsel, for the city of Springfield.

LLOYD F. HAMILTON and SAMUEL P. WHEELER, attorneys for the Capital Electric Co.

MR. JUSTICE WALL DELIVERED THE OPINION OF THE COURT.

The appellant filed his bill in chancery against the appellees alleging that he was a resident and tax payer of said city; that on the 30th October, 1894, the city council adopted the following ordinance:

" Whereas, the Capital Electric Company of the city of Springfield, Illinois, has submitted to the city of Springfield, Illinois, the following proposition in words and figures following:

" To the City Council of the City of Springfield :

The Capital Electric Company of the city of Springfield proposes as follows :

Article 1.   To furnish for the use of said city to light its streets, alleys, avenues, sidewalks, public grounds and public buildings three hundred (300) arc lights, and such additional number of arc lights as the city council may from time to time order, all of two thousand (2,000) nominal candle power, and to light the same on moonlight schedule, and on very cloudy nights, at and for the price of ·$113.33 (one hundred and thirteen and thirty-three one-hundredths dollars) for each arc light per annum.

Article 2.   This company proposes to erect a plant capable of lighting said city with three hundred (300) arc lights of nominal two thousand (2,000) candle power, and to add two (2) fifteen hundred (1,500) sixteen (16) candle power incandescent alternating dynamos, all to be of recent manufacture and to be of first-class workmanship, and to superintend the erection and operation of said plant and to procure the necessary funds for the erection of the same.

Article 3.   If the city council of the city of Springfield shall each year draw and deliver to its order, in favor of the company, on the city treasurer of the city, as soon as the annual levy and appropriation for lighting the streets of said city shall be made, and payable only out of the said street lighting fund, when collected, for a sufficient sum to pay said Capital Electric Company at the rate of one hundred and thirteen and thirty-three one-hundredths dollars for each arc light per annum ordered by the city council and furnished by said company, payable at the expiration of each and every month that the lights have been furnished, and said company agrees to apply such funds to paying the current expenses incurred in operating said plant in lighting said streets and alleys of said city, and the interest on purchase money required to erect said plant, any portion or balance remaining out of said lighting fund after paying the current expenses and interest as aforesaid shall be credited to the account of said city and shall be applied to paying the purchase price of said plant if the city elects

to purchase the same.   But it is understood and agreed by said company that in case the city accepts this proposition, such acceptance shall create no indebtedness against said city in favor of this company.   This company expressly agrees in case the city shall elect to draw and deliver the said order or orders for the purpose aforesaid that this company will not look to the city of Springfield for the payment of said order or orders, but will look for payment only to the lighting fund, which shall have been levied and appropriated as aforesaid.   And in case the city shall accept this proposition, it is expressly agreed by this company that it shall be optional with the city whether it shall draw and deliver the said order or orders to said company or not.

Article 4.   The Capital Electric Company proposes to erect a suitable electric plant, and to keep full and complete account of the cost thereof, and to maintain and operate the same on an economical basis, and to keep an accurate and fair account of the cost of such operation and maintenance, and whenever the profits arising from the operation of said plant shall have paid the cost of said plant and interest thereon, and the cost of operating and maintaining the same, the city of Springfield may, at its option and election, take the said plant; and in case the city does so elect, the Capital Electric Company will convey the said property and plant to the city of Springfield, free of incumbrance, but no obligation or liability rests on the city of Springfield to pay any sum of money except for the lighting of the city, and when the city exercises said election, this company shall be thereby released from any obligation to furnish lights as provided for herein.

Article 5.   It is hereby agreed and understood by and between the city of Springfield and the Capital Electric Company, that the said company shall furnish to the said city incandescent lights for the lighting of the City Hall and engine houses without cost to said city, so long as this proposition shall be in operation; the city to furnish all renewals and police station.

Article 6.   The city council by and through the proper

committee, or any duly authorized agent, shall have access at any and all times to the books and records of said company.

Article 7. The officers and directors will not receive any salaries or fees in the conduct and management of said plant.

Now, therefore, be it ordained by the city council of the city of Springfield, that the foregoing proposition of the said Capital Electric Company be and is hereby accepted."

That the city was then and for a long time had been indebted in excess of the constitutional limit of five per cent upon the assessed valuation of taxable property therein; that the proposition set out in said ordinance and the acceptance thereof were merely the formation of a plan theretofore devised whereby the city might evade the constitution, and acquire an electric light plant, and that the acceptance of the proposition in legal effect created an indebtedness on the part of the city to said Capital Electric Company in violation of law, and was therefore void. That in pursuance of said ordinance the said company had built the plant, and that the lights had been furnished, and that a bill for the month of June, 1895, had been paid according to said contract amounting to $2,883.33.

That before the plant was complete said company had leased the same to the firm of McCaskey & Holcomb, and that the latter had thereby agreed to furnish the 300 arc lights to the city at $60 per annum for each light whereby the said company was deriving a net profit of about $1,300 per month on the said contract. That the price fixed in said contract was exorbitant and known to be so by the council when it was accepted, and more than would have been necessary, had fair competition been invited or permitted. That said plant is being operated in pursuance of the terms of said agreement with the understanding that the excess shall in some way be enjoyed by the city, but that such agreement was unlawful, oppressive on the public, and *ultra vires*, the ulterior design being that the city should acquire the plant and that a fund specified in the appropria-

tion ordinance, known as the " street lighting fund," amounting to $34,000 per annum, was being thus diverted to that purpose, and that if not prevented such unlawful action would be continued.

Prayer that the contract be set aside, that the city be required to invite competition for lighting, and to accept suitable propositions to be so obtained, for a temporary injunction and for general relief.

The answer of the city averred that for eight years prior to October 30, 1894, the streets had been lighted by arc and incandescent electric lights and by gas, the power of all the light so obtained being 306,356 candle power; that said electric light was furnished by the Springfield Electric Light and Power Company, and the gas by the Springfield Gas Company; that complainant was interested financially in said last named electric light company and that many of the shareholders in that company were also shareholders in said gas company; that there were then no other electric or gas companies in said city; that the city had been paying $137 per year for each of the 147 arc lights furnished by said last named electric company, and proportionately for the incan_ descent and gas lights, amounting to the sum of $2,346.02 per month, or $20,161 per year; that the light so obtained was poor and utterly insufficient to meet the wants of a city of 35,000 people, and that there was a great popular demand for more and better light by the abandonment of the gas and incandescent lights and substitution therefor of arc lights; that negotiations with the said electric and gas companies for more, better and cheaper light having failed, and the said Capital Electric Light Company having submitted the proposition set out in said ordinance, the city council thought it better to obtain 300 arc lights of 600,000 candle power at $2,833.33 per month than to pay $2,346.77 per month for the lights then in use, aggregating only 306,356 candle power; that it was true the city was then indebted beyond the limit fixed by the constitution, and knew it could not become indebted further, and denied that by said scheme it was to, or did create, any additional indebtedness, but that it merely

availed itself of the opportunity offered by said proposition, whereby it could obtain ninety-eight per cent increase of light at an additional expense of thirteen per cent, with the option to cease at any time, and with the further option of acquiring the plant as provided, which latter option had not been accepted.

That it was free to continue the use of said 300 arc lights or not, and was under no obligation whatever in that respect.

That the free incandescent lights furnished under said arrangement, to the city buildings, amount in value to $194.40 per month, which would be an annual saving of $2,332.80.

Denied all unlawful confederation, etc., etc.

The Capital Electric Company filed its answer in which it stated, at some length, the condition of the city in respect to lighting, the negotiations between the city and the old electric light and gas company, the organization of the defendant company for the purpose of relieving the city and the submission of the proposition referred to, its acceptance as shown by the ordinance, and the construction of the plant; denied that the city was under any obligation to take the light or to take the property, but that it merely had an option to do so, and denied that by reason of what has been done, the city had incurred any indebtedness whatever.

This summary of the pleadings, which omits many details, will sufficiently disclose the real nature of the controversy. The cause was heard on bill, answer, replication and proofs, and the court rendered a decree dismissing the bill at the cost of complainant, from which the present appeal is prosecuted. It appeared from the evidence that for some years prior to October 30, 1894, the city had been lighted, as stated in the answer, by 147 arc lights, by incandescent lights and by gas; the entire quantity of light being, as measured by candle power, but slightly more than one-half the amount now produced by the 300 arc lights furnished by the defendant Capital Electric Company, and

to this should also be added the free incandescent lights supplied by the latter company to the city buildings. According to the testimony of Mr. Southwick, who was a member of the council and a member of the special committee of three to investigate the matter of electric lighting, it had cost the city for several years an average of $34,000 per year for the light it had so used.

This is higher than the amount stated in the answer, but it seems to be corroborated by other evidence in the record, and, so far as we have been able to find, is not contradicted. This witness states that as the city had been in the habit of placing that amount in the annual appropriation bill for lighting purposes the suggestion was that that sum should remain the basis of the city's expenditure for light, but the desire was to get more and better light and if possible also to acquire a plant. It appears that this was the subject of much public agitation and that it became an issue in municipal elections—and that the council endeavored to obtain concessions from the companies then furnishing the lights but without satisfactory results.

It appears that those companies were principally controlled by the same parties and that the appellant was identified with that electric company. As the city was indebted beyond the limit, the question was how to reach the desired end. The Capital Electric Co. was organized with some sixty stockholders, all citizens, no one taking more than $1,000 of stock, with the avowed purpose of relieving the city in the premises and disclaiming any purpose of profit to the stockholders.

Nothing was paid on the stock, though it was all subscribed and no certificates of stock were issued. The money to build the plant was borrowed from different banks in the city upon the company's note, secured by a pledge of its stock list—each subscriber being considered solvent for the amount of his subscription, and so the plant was constructed. There is no incumbrance upon it. Before the adoption of the ordinance the company had effected an agreement with McCaskey & Holcomb, by which the latter were to take the

property and operate it and furnish the arc lights for the city at $60 each, per annum, some $53 less than the price fixed in the ordinance—and by which they were to receive seventy-five per cent of the income from commercial lighting.

This contract, which was very favorable to the company, was obtained, as it seems, in part consideration of the agreement of the company to buy its machinery from the manufacturing company represented by McCaskey. This was known to the council before the ordinance was adopted; doubtless it influenced their action more or less.

Afterward the old company made a proposition to furnish 300 arc lights at $90 each per year, but this was thought to be less favorable to the city than the proposition already accepted, and so it was declined. On this occasion the contract of the Capital Company with McCaskey & Holcomb was fully stated to the council by Mr. Tracy, the president of the company, and it was argued that if the city should avail itself of the option presented by the proposition of this company it would in four or five years have the right to own the plant without further cost, and it is to be presumed that the view thus presented had something to do in inducing the conclusion to reject the proposition of the old company.

It is apparent that if the proposition of the Capital Company could be accepted, or if the option it proposed could be made available, it was much more desirable than that of the old company, and that there was no mistake made in adhering to it.

Aside from the reasons that operated upon the council the question is whether their action did in form impose a pecuniary obligation upon the city, it then being incapable of increasing its indebtedness.

This in substance is the point as presented in the brief of the appellant; and as is there well remarked, if no contract was entered into by the city there was no occasion for filing the bill, as there was nothing to enjoin; but, as is argued, if the parties intended to make a contract, and as far as they

could, did, then the bill was properly filed. Regardless of what may be supposed was the intent as gathered from extrinsic circumstances, it is to be ascertained what is the true construction of the ordinance.

Does it impose any obligation upon the city of which the law would take notice if the city were untrammeled by the limitation of the constitution ?

The proposition contains seven articles, the first of which, in a single sentence, is an offer of three hundred arc lights and such additional number as may be required, at $113.33 each, per year; the second contains a statement of the capacity and style of the proposed plant and that it should be erected and operated under the supervision and with the funds of the company; the third provides that if the city council shall annually deliver to the company an order on the city treasurer for a sum sufficient to pay for the lights at the price named in article one, payable at the expiration of each month during which the lights have been furnished, then the company is to credit the city with the surplus above cost of production, which sum so credited shall be applied to the purchase price of the plant, if the city shall elect to purchase the same, and further :

" But it is understood and agreed by said company, that in case the city accepts this proposition, such acceptance shall create no indebtedness against said city in favor of this company. This company expressly agrees in case the city shall elect to draw and deliver the said order or orders for the purpose aforesaid, that this company will not look to the city of Springfield for the payment of said order or orders, but will look for payment only to the lighting fund which shall have been levied and appropriated as aforesaid. And in case the city shall accept this proposition, it is expressly agreed by this company that it shall be optional with the city whether it shall draw and deliver the said order or orders to said company or not."

By the fourth article the company proposes to keep an account of the cost and operation of the plant, and that when the profits shall have paid the cost of the same, the

city may take it free of incumbrance, but no obligation rests on the city to pay any sum except for lighting.

The fifth refers to incandescent lights to be furnished free to the city buildings.

The sixth gives the city access to the books of the company and the seventh provides that the officers and directors shall receive no compensation for their services.

It is argued that the first article, unless modified by the third, creates a contract in and of itself when accepted by the city, and then it is attempted to show that the provisions of article three have no reference whatever to article one, but that the latter is wholly independent of all else in the offer.

Counsel dwell upon the phraseology of the third article, "in case the city accepts this proposition such acceptance shall create no indebtedness," and the company agrees "in case the city shall elect to draw and deliver such order" that it will look, not to the city, but only to the lighting fund, for the payment of the order, and insist that by "this proposition" is meant only what is contained in article three. It seems clear that this view is negatived by the next and last sentence of the article, which reads as follows:

"And in case the city shall accept this proposition it is expressly agreed by this company that it shall be optional with the city whether it shall draw such orders or not."

"This proposition," as it occurs in this sentence, plainly refers to the offer as a whole, and there is no fair construction which would give the same words occurring in the preceding sentence a different meaning. Turning to the ordinance, it is seen that it begins thus:

"Whereas, The Capital Electric Company has submitted to the city of Springfield, Illinois, the following proposition, in words and figures following.

"To the City Council of the City of Springfield:

The Capital Electric Company of the city of Springfield proposes as follows: Article I," etc., and closes thus:

"Now, therefore, be it ordained by the city of Springfield that the foregoing proposition of the said Capital Electric Company be and is hereby accepted."

Manifestly it was understood that the offer was entirely all one proposition. In the bill it was so treated. For example (see Abstr. p. 2), it is averred that said company submitted a proposition to the city, a copy of which is attached, and that "in the second article of this proposition," etc., "and by article one," etc. In various averments of the bill "the proposition" as a whole is referred to, as for instance, (Abs. 3) it is said the scheme involved in "the proposition" was to evade the constitution, and that the provisions of "the proposition" are involved, obscure, and contradictory, and a charge (Abst. 7) which clearly couples the first and third articles, and that "article four of said proposition is vague," etc. So it would seem that the position now taken in the argument was not in the mind of counsel when drawing the bill and is somewhat of an afterthought. Still if it is sound it should be so declared; but we think it is unsound. It is perfectly plain that it was not intended to bind the city to take the light for any particular time or to take the plant. It was wholly at the option of the city to avail of the opportunity offered as to the light from month to month or as to the acquisition of the plant.

As to the light used, the only thing the city was expected to do was to exchange therefor its warrant out of the fund to be appropriated for lighting purposes and to incur no responsibility in respect to the ultimate payment of the warrant.

Manifestly it was the express purpose and intention that the city should be under no obligation but should merely have the option of taking the light. It might begin to take or not. Having begun it might continue or not, just as it should choose. True, there was an inducement which would probably lead to continued acceptance of the privilege offered, in that the profits of the business should be credited to the city and would in a few years make the city the owner of the plant. It seems hardly necessary to discuss this point further; indeed it is not apparent how it can be further discussed without merely repeating what has already been said.

Counsel for appellant also argue that the supposed contract is invalid because of the statutory provisions with regard to the annual appropriation bill and the annual tax levy.

If there was no contract the objection is not important. Besides, we find no such allegation in the bill, and would not be disposed to consider such an objection when it is presented here for the first time.

It is further argued that the contract was unreasonable. Here again the answer is that if there was no contract the objection can not be entertained. Aside, however, from the matter of contract, as to which we care to say nothing further, it may not be amiss to consider the position of the city if it shall continue to avail itself of all the option it has under the proposition.

It needs the light, and if it should pay the price named it will be better off than to return to the old condition of things, where it paid nearly if not quite as much and got in return a little more than half the light.

Should it ignore the present arrangement and submit the matter to competition it might do better and it might not.

That would depend upon various contingencies which will readily suggest themselves on reflection.

If the financial condition of the city is such that the annual appropriation of $34,000 for lighting can be easily maintained, it would seem to be a wise and judicious use of the money to apply it according to this proposition; for if the contract of McCaskey & Holcomb is carried out it is probable that in the course of four or five years the city will have the right to take the plant without further outlay. As is conceded by the brief of appellant, the power to light the streets includes the power to build or purchase a plant. If this can be done by an accumulation from taxes within the power of the city to levy without imposing unduly upon the tax payer, why should any one object, unless it can be shown that as a matter of policy based on experience or observation, it is better that the city should buy the light rather than undertake to produce it?

And would not this be a consideration that should be left to the council ? Would a court of chancery go into such an inquiry or an inquiry that assumed or conceded the power of the city to act in the premises ?

It is urged by appellee that the bill was not filed by the complainant in good faith as a tax payer, but that he is acting merely in the interest of his Electric Company, and that there was unwarranted delay in bringing the suit. As we regard the case it is unnecessary to discuss the points thus presented, nor have we followed in detail the argument of appellant, but have sought rather to condense the whole case, so as to present it, and our view of it, as briefly as possible. We are of opinion the decree dismissing the bill was properly entered, and it will therefore be affirmed.