RICHARD L. HOWELL v. THE CITY OF MILLVILLE ET AL.

1. The "Act to incorporate the city of Millville," approved February 26th, 1866, gave power to the common council to pass ordinances for (among other things) "lighting the streets" of the city. *Held*, that, looking at the whole act, the grant of that power did not, by implication, confer authority on the city to erect and maintain an electric light plant.

2. The "Act authorizing the lighting of public streets and places in the cities, towns, townships, boroughs and villages of the state," approved May 22d, 1894 (*Gen. Stat.*, p. 2174), does not confer power on the municipalities therein enumerated to erect and maintain electric light plants.

On *certiorari.*

This writ directs defendants to certify to this court a resolution adopted by the common council of the city of Millville on April 11th, 1896, directing the lamp committee to advertise for proposals for erecting an electric light plant in the city of Millville, to be paid for by said city, and all other proceedings of said council and committee relative to the erection of an electric light plant.

The return to the writ discloses such a resolution as called for by the writ to have been adopted on April 11th, 1896. It also discloses a resolution adopted by said council on May 13th, 1896, accepting the services of Charles E. White to prepare specifications, at a cost of $150, for an electric light plant and a power-house.

Argued at November Term, 1896, before Justices DEPUE, MAGIE and GUMMERE.

For the prosecutor, *Walter H. Bacon.*

The opinion of the court was delivered by

MAGIE, J. As the resolutions of the common council of the city of Millville brought up by this writ require the immediate expenditure of some money and look to the future expenditure of amounts probably much larger, the right of the council to pass them may now be challenged.

If the common council, as is claimed, have no power to expend the city's money in the erection of an electric light plant, it is obvious that it could not expend such money in preparing specifications or advertising for proposals for the erection of such a plant.

If the resolutions called for no present expenditure of public money, yet if they set in motion a proceeding which, in its outcome, will necessarily require such expenditure, any taxpayer may prosecute a *certiorari* for their review before final action even though there is no certainty that such final

action may be taken.    *Middleton* v. *Robbins*, 25 *Vroom* 566 ; *Biddle* v. *Riverton*, 29 *Id.* 289.

It follows that we must consider the claim of prosecutor, which is that the city of Millville has not been endowed with power to erect or maintain an electric light plant.

The city of Millville was created by an act approved February 26th, 1866 (*Pamph. L.*, *p.* 116), and by section 10 of that act the common council of the city was given authority to pass ordinances, among other things, for "lighting the streets" of the city.   It is to be observed that this act does not, in express terms, confer authority upon the municipal corporation to take and hold real estate.   Such authority may probably be inferred from the grant of certain powers to the city of Millville, such as the power to erect and maintain a city hall, school-houses and other necessary public buildings. But it is not, in my judgment, to be implied from the grant of power to light the streets of the city.   In the first place, similar power was granted to almost every municipal corporation in this state created by special charter, but I have been unable to discover that such grant has ever been claimed or construed to confer, by implication, authority to purchase land, erect gas works and engage in the manufacture of gas for street lighting.   The power to light streets has been exercised, but by means of contracts with other persons or corporations to furnish some illuminating material for that purpose. Authority to make such contracts may doubtless be implied from this grant, and it is sufficient to enable the power to light streets to be effectively exercised.   In the second place, the implication of authority to erect and maintain a plant for lighting the streets is, in my judgment, inconsistent with the provisions of section 19 of the charter, which requires the council to establish "lamp, police and watch districts" in the city, and provides that taxes for lighting streets shall be assessed wholly upon property within such districts.   It was no doubt beyond the power of the legislature to make such provision.    *Morgan* v. *Elizabeth*, 15 *Vroom* 571 ; *Baldwin* v. *Fuller*, 10 *Id.* 576 ;  *S. C.*, 11 *Id.* 615 ; *Lydecker* v. *Englewood*,

12 *Id.* 154; *Peck* v. *Raritan*, 23 *Id.* 319. But the legislative intent to thus impose the expense of lighting streets upon limited areas of the city indicates, I think, that there was no purpose to confer power other than that of lighting the streets by an annual expenditure of money which was thus to be assessed.

It is next contended that the act entitled "An act authorizing the lighting of public streets and places in the cities, towns, townships, boroughs and villages of the state and to erect and maintain the proper appliances," approved May 22d, 1894 (*Gen. Stat.*, *p.* 2174), has conferred upon the city of Millville the power to erect and maintain an electric light plant to light its streets.

It is claimed by prosecutor that the purpose of the common council is to erect and maintain such a plant to light not only the streets, but dwellings, stores, &c., for compensation. There is no sufficient evidence that such a purpose is entertained by the council. If that is the purpose, the act of the council in furnishing light for commercial purposes would plainly be *ultra vires*. *Biddle* v. *Riverton, ubi supra.*

But, in the absence of proof, it must be assumed that these public officers have not intended to do more than they have been empowered to do by law, viz., to light the streets of the city.

By the act of 1894 (*Gen. Stat.*, *p.* 2174), broad powers are conferred on many classes of municipalities (including cities) to light public streets and places with gas, electric lights or otherwise. Its provisions were under consideration in this court in *Schefbauer* v. *Kearney*, 28 *Vroom* 588, but the point now made was not involved. The object of the act, as expressed in the title, included the grant of authority to erect and maintain proper appliances for lighting the streets. Under such a title, the legislature could doubtless have conferred power to erect and maintain gas-works and electric light plants. But the body of the act shows what the legislature deemed to be "proper appliances" for that purpose, for the grant is to erect and maintain "necessary and proper

posts, poles, lanterns and fixtures," and these are to be erected on public streets. The express grant of power in respect to these enumerated appliances entirely satisfies the title of the act, and excludes any inference that power was impliedly granted to erect other appliances. Moreover, the grant is not only to erect and maintain such appliances, but to make and enter into contracts with any other party or parties for any term not exceeding five years, the annual expense of which is to be annually assessed and collected by taxation. The plain purpose of the act was to empower the municipalities named to light their streets by contract extending for a number of years not exceeding five. Without such power, such a contract would be invalid. *Atlantic City Water Works Co.* v. *Read,* 21 *Vroom* 665. There is nothing in the act which justifies the claim that power is conferred on these municipalities to erect and maintain an electric light plant or other appliances than those specified and which are to be erected on the streets.

For these reasons, the resolutions brought up by the writ must be vacated and set aside, with costs.