### BARKER v. TOWN OF FLOYD.

(Supreme Court, Appellate Division, Fourth Department. April 30, 1901.)

1. TOWNS—AUTHORITY TO ERECT HALL.
   Laws 1865, c. 380, authorizing the town of Floyd to erect a town hall, and to make provision for its payment, was an act to provide for a present necessity, and did not authorize a purchase to be made of a town hall under the provisions of such act 33 years later.

2. SAME—REPEAL OF STATUTE.
   Laws 1890, c. 568, known as the "Town Law," and authorizing, among other things, the erection of town halls, was designed to prescribe a general rule uniform throughout the state, and repealed by implication any former general or special act in relation thereto, even though the acts were not repugnant.

Appeal from special term, Oneida county.

Action by Irving C. Barker against the town of Floyd. From a judgment dismissing the complaint (66 N. Y. Supp. 216), plaintiff appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

D. F. Searle, for appellant.

Josiah Perry, for respondent.

LAUGHLIN, J. This is an action to recover $500 pursuant to a land contract made on the 10th day of November, 1898, between plaintiff and the members of the board of town auditors of the town of Floyd, as such, whereby plaintiff agreed to sell and convey to them a parcel of land in said town for the consideration of $500. Plaintiff tendered full performance of the contract on his part, and performance was refused on the part of said board upon the ground that the contract was illegal and void. The only basis for the contract was a resolution adopted viva voce by the electors present at 12:15 o'clock at the annual town meeting held on the 1st day of March, 1898, as follows:

"Whereas, it is necessary to have a town hall in the town of Floyd for the purpose of holding elections and town meetings and transacting other town business, and as the town board have the option of purchasing the property which we now occupy, and also the shed on the same premises, be it resolved, that the town board purchase this property for a town house at a sum not exceeding five hundred dollars."

And the following resolution, adopted at a meeting of the town board on the 3d day of March, 1898:

"The town board purchase of M. J. Barker his store or building now occupied as town hall for the sum of five hundred dollars ($500), said building to be occupied as a town house. Motion carried that supervisor and town clerk issue certificates to the amount of five hundred dollars ($500), payable to M. J. Barker, the first day of Feb., '99, said certificates to be held by J. N. Jacobs and E. J. Pepper, committee, until a warranty deed is delivered to them by M. J. Barker. Motion carried that the key of the town hall be left in possession of the town clerk, and that justices of the peace shall have the use of said hall in private practice, each justice to furnish his own fuel."

These proceedings did not conform to the requirements of section 190 of the town law (chapter 569, Laws 1890), but it is contended that they were authorized by chapter 360 of the Laws of 1865, which is a special act, and reads as follows:

"An act to authorize the town board of the town of Floyd, in the county of Oneida, to erect a town hall, and to make provision for the payment thereof.

"Passed April 10, 1865; three-fifths being present.

"The people of the state of New York, represented in senate and assembly, do enact as follows:

"Section 1. The town board of the town of Floyd, in the county of Oneida, are hereby authorized to construct for the use of said town, at such place therein as will best subserve the convenience of the inhabitants thereof, a town hall, at an expense not to exceed the sum of two thousand dollars.

"Sec. 2. The said board are hereby empowered to borrow, upon the credit of said town, the sum of two thousand dollars, and to raise the same, by general tax, at the same time and in the same manner as the next general tax of said town is imposed and collected, and the said sum, when collected, shall be paid to and applied by the said board in payment of the indebtedness created by virtue of this law.

"Sec. 3. This act shall take effect immediately."

At the time of the enactment of this special law there was in force a general law applicable to the subject. Chapter 197, Laws 1847. The general law authorized the electors of any town in which there

shall not be a town house at any annual town meeting to vote a sum of money "not exceeding in number of dollars twice the number of electors in said town" for the purpose of purchasing a site for and the building of a town house, provided a notice of such intended action shall have been posted in five public places in the town not less than 10 or more than 15 days preceding such meeting. The purpose of this special act must have been either to authorize the outlay of a larger sum for the contemplated purchase of a site and town house than could be expended under the general act, or to authorize a purchase after the town meeting of that year and before the next meeting would be held. In either case it was to provide for a present necessity, and not for a purchase to be made 33 years later. There was no attempt to exercise the authority conferred by this act until 1898, as stated. The town law was prepared by the commissioners of statutory revision, and transmitted to the legislature in 1890, and enacted, as thus drafted, at the session held that year. 3 Senate Documents of 1890, p. 933. The revisors' note accompanying their draft of this law showed very clearly that it was their design to provide one general uniform system of town laws for all the towns of the state. They say in part:

"Our town laws should be plain, uniform, and consistent. That they are not so is apparent. The provisions of the Revised Statutes mentioned were presumably fairly adapted to conditions existing at the time of their adoption. That it is no matter of surprise that subsequent changes in those conditions required corresponding changes in the laws subsequently passed. The present objectionable features of these statutes are obvious in their result, and consist in the fact that the additional and amendatory acts did not harmonize with the then existing laws affected by them, and that such existing laws were not repealed, or made to conform with the additional and amendatory acts. The outcome is a body of conflicting and inconsistent statutes. [Page 939.] * * * The bill drafted is not an attempt to introduce new or untried theories, but to simplify and harmonize existing laws in accordance with the latest expressions of legislative intent, to exclude what is useless and supply obvious omissions, without affecting or impairing substantial rights. The principal changes consist in the adaption and application, where practicable, of uniform and simplified methods in town matters, in accordance with established and approved systems of procedure in analogous cases. [Page 930.]"

Prior to the enactment of the town law, the amount of money authorized to be expended for the purchase of a site and the construction of a town house, under chapter 197 of the Laws of 1847, had been increased to four times the number of dollars that there were electors in the town. Chapter 135, Laws 1889. Section 190 of the town law, as originally enacted, followed, in this respect, the general law of 1847 as thus amended in 1889, but it required the vote of the electors to be by ballot, and provided that the question might be voted upon at a special town meeting duly called, as well as at the annual town meeting. An amendment thereto, made by chapter 531 of the Laws of 1899, removed all limitation as to the amount to be expended for such purposes, and provides that the matter may be considered at a biennial town meeting (annual town meetings having been abolished) or at a special town meeting lawfully called. Section 32 of the town law, as amended by chapter 481 of the Laws of 1897, provides that notice of an application to have such a proposi-

tion voted upon shall be filed with a town clerk at least 20 days before the town meeting, and requires the town clerk to give 10 days' public notice of the proposed submission of such question. We think it manifest, therefore, that the town law was designed to prescribe a general rule uniform throughout the state with reference to expending money for the purchase of sites and the erection of town halls, and that there no longer remains any necessity for the existence of the special act of 1865. It is now a well-settled rule of statutory construction that a general statute covering the same subject-matter, and containing new provisions, and manifestly designed by the legislature to embrace the entire law upon the subject, operates to repeal by implication a former general or special statute, even though the two are not repugnant. People v. City of Brooklyn, 69 N. Y. 605; People v. Westchester Co. Sup'rs, 73 N. Y. 173; Heckmann v. Pinkney, 81 N. Y. 211; People v. Gold & Stock Tel. Co., 98 N. Y. 67; People v. Jaehne, 103 N. Y. 182, 193, 8 N. E. 374; In re New York Inst. for Instruction of Deaf and Dumb, 121 N. Y. 234, 24 N. E. 378; Cromwell v. MacLean, 123 N. Y. 474, 25 N. E. 932; McDermott v. Railroad Co., 85 Hun, 422, 32 N. Y. Supp. 884; Bramston v. Mayor, etc., 6 El. & Bl. 246; Bartlet v. King, 12 Mass. 537. It follows, therefore, that the contract upon which this suit is based was void, and the judgment appealed from should be affirmed, with costs. All concur.