THE TOWN OF SEAFORD, a municipal corporation of the State of Delaware, *v.* EASTERN SHORE PUBLIC SERVICE COMPANY, a corporation of the State of Delaware, THE PENNSYLVANIA COMPANY FOR INSURANCE ON LIVES AND GRANTING ANNUITIES, a corporation of the Commonwealth of Pennsylvania, and AMERICAN EMPLOYERS' INSURANCE COMPANY, a corporation of the Commonwealth of Massachusetts.

(*January* 5, 1942.)

RODNEY and SPEAKMAN, J. J., sitting.

*James R. Morford* (of Marvel and Morford) for plaintiff.

*Daniel O. Hastings* (of Hastings, Stockly and Layton) and *Frederick W. C. Webb* (of Salisbury, Md., pro hac vice) for defendants.

Superior Court for New Castle County, No. 149, September Term, 1939.

RODNEY, J., delivering the opinion of the Court:

The plaintiff contends that his action in declaring generally on the bonds and reserving the assignment of breaches to the replication is in accordance with established practice. This is not controverted. The plaintiff, however, contends that the action of the defendant in failing to demur to the replication, but on the contrary of filing the rejoinder, is, in effect, a plea of confession and avoidance of the matters set forth in said replication and Bill of Particulars. Without prolonging the discussion, we will briefly state our views.

The condition of the bonds here sued on are in effect of double aspect. Such condition is (a) to prosecute the appeal "with effect" and pay all costs or otherwise abide the decree in appeal if they fail to make their plea good, and (b) to pay the whole amount of such damages as complain-

ant may suffer by reason of the stay of the execution of the decree.

The replication of the plaintiff says the defendant did not prosecute the appeal with effect and pay the damages, and the Bill of Particulars sets out the damages claimed.

In *Moffat Tunnell Imp. Dist. v. United States F. & G. Co.*, 7 *W. W. Harr.* (37 *Del.*) 473, 185 *A.* 186, it was held that the words "with effect" in an appeal bond meant "with success." The rejoinder filed by the defendant was, in effect, in confession and avoidance of the statement of its failure to prosecute the appeal with effect. The rejoinder admitted that the appeal had not been prosecuted with success. The rejoinder did not admit, but on the other hand expressly denied, any damage to the plaintiff. These items of damage were set up in the Bill of Particulars but, as such, are not self-proving, but must be supported by evidence. No demurrer would lie against the Bill of Particulars, as such, and the existence of legal damage was denied by the rejoinder. The rejoinder did not confess the items of damage set up in the Bill of Particulars. At the trial testimony was offered in support of the Bill of Particulars, and objected to, and motions to strike this testimony from the record have been made.

We think that the state of the pleadings does not estop the defendant from raising questions as to the lack of power of the Town of Seaford to purchase the electric light plant, nor as to the validity of the contract of October 18, 1938.

We shall now briefly consider the question of the power of the Town of Seaford to acquire an electric light plant, leaving the questions of the method of acquisition for later discussion.

There are three statutes which have some claimed materiality:

1. Chapter 153, Vol. 29, Laws of Delaware, p. 487, which is the Charter of the Town. Under this act the corporate authorities are authorized "to provide lamps and to light the streets and public places of every description in said town." Section 19. The plaintiff contends that the above provision, when coupled with authority concerning "the good government and welfare of the Town" and the general police power, authorizes the purchase of an electric plant for public lighting and to provide lights for private users. For this he cites *City of Crawfordsville v. Braden,* 130 *Ind.* 149, 28 *N. E.* 849, 14 *L. R. A.* 268, 30 *Am. St. Rep.* 214; *Fawcett v. Mt. Airy,* 134 *N. C.* 125, 45 *S. E.* 1029, 63 *L. R. A.* 870, 101 *Am. St. Rep.* 825; *Ellinwood v. City of Reedsburg,* 91 *Wis.* 131, 64 *N. W.* 885; *Heilbron v. City of Cuthbert,* 96 *Ga.* 312, 23 *S. E.* 206; *Overall v. City of Madisonville,* 125 *Ky.* 684, 102 *S. W.* 278, 12 *L. R. A.* (*N. S.*) 433; *Hay v. City of Springfield,* 64 *Ill. App.* 671; *Blanchard v. Village of Benton,* 109 *Ill. App.* 569; *Keenan & Wade v. City of Trenton,* 130 *Tenn.* 71, 168 *S. W.* 1053, *Ann. Cas.* 1916*B,* 519.

The defendant denies that the cited provisions of the Charter give the Town of Seaford the authority contended for. It cites *Spaulding v. Inhabitants of Town of Peabody,* 153 *Mass.* 129, 26 *N. E.* 421, 10 *L. R. A.* 397; *Village of Swanton v. Town of Highgate,* 81 *Vt.* 152, 69 *A.* 667, 16 *L. R. A.* (*N. S.*) 867; *Howell v. City of Millville,* 60 *N. J. L.* 95, 36 *A.* 691; *Hyatt v. Williams,* 148 *Cal.* 585, 84 *P.* 41.

We think it is clearly established in this State that a municipal corporation has no power except that conferred by legislative grant or by fair and necessary implication because of being incident to the powers expressly granted or essential to carrying them out.

We are not content to hold that the Charter of

the Town of Seaford, Vol. 29, Ch. 153, of and by itself gives the power to purchase the electric light plant here involved, but we think the Charter provision may be considered in connection with other legislation.

2. The second act called to our attention as having material bearing upon the present question is the Act of April 20, 1933, being Chapter 121, Vol. 38, Laws of Delaware, page 484. The title of the act is "An Act Authorizing the Council of the Town of Seaford to Borrow Money and Issue Bonds to Secure the Payment Thereof, for the Purpose of Providing Electric Lights for the Town of Seaford." We shall pause but slightly to consider this act. The Town did not borrow money and did not issue bonds pursuant to the act, and to that extent the quoted act has no bearing on the present question. We think, however, that the quoted act is a plain legislative recognition of the power of the Town to own and operate an electric light plant for public lighting, and of furnishing light for private use. The act expressly authorized the Town to borrow the money and to expend it "for the purpose of lighting the Town of Seaford and furnishing electric light for private use, either by the establishment of a proper electric light plant, by purchase or otherwise * * *". Section 1.

The defendant denies that Chapter 121, Vol. 38, has any validity because it contends (a) that the statute is unconstitutional, because it contravenes Art. II, Sec. 16 of the Delaware Constitution, which provides that no bill (Act) shall contain more than one subject, which shall be expressed in its title, and (b) that the statute has been repealed by implication by Section 4 of Chapter 25, Vol. 39, Laws of Delaware, 2d Sp. Sess., hereinafter considered. Under (a) it is contended that the body of the act is much broader than the title, and that the authority of the title for "Providing * * * Lights for the Town of Seaford" can

not authorize the sale or distribution of electric current to private consumers. Without laboring the question we think the view contended for is of too constricted a nature, and hold the act not unconstitutional for the given reason. We shall briefly consider the objection (b) that the act is repealed by implication. Repeals by implication are not favored. "A former act will not, by implication, be held to have been repealed by a later act unless the two cannot have a concurrent operation or unless the latter so covers the subject matter of the former as to afford conclusive evidence of an intent to supersede it." *State ex rel. Du Pont, Tax Commissioner, v. Bradford, 7 W. W. Harr.* (37 *Del.*) 289, 183 *A.* 316, 317. We shall not pause long to consider this objection. The later act, Sec. 4, Chapter 25, Vol. 39, which, it is contended, repealed Chapter 121, Vol. 38, by implication, is, concededly, still in force. If it was intended to and did cover the same subject matter as embraced in the former act, then the substantial provisions of the former act are now in force. If it was not intended to cover the provisions of the former act, and did not do so, then there can be no repeal by implication. Except for the matter of covering the same subject matter, there is no discernible reason why the two acts might not remain in force.

3. The third act drawn to our attention is Sec. 4, Ch. 25, Vol. 39, Laws of Delaware, 2d Sp. Sess. This section is an express repeal of Sec. 32 of the original charter as found in Vol. 29, page 518, and the substitution of a new section in lieu thereof. The original Sec. 32 simply denied the right of the corporate authorities, of the Town to issue bonds without the express authority of the General Assembly. The new and amendatory law provided that

"The Council may borrow money and issue bonds or certificates of indebtedness to secure the payment thereof on the faith and credit of the Town of Seaford to provide

funds for the erection, the extension, the enlargement or the repair of any plant, machinery, appliances or equipment for the supply, or the manufacture and distribution of electricity or gas for light, heat or power purposes; for the furnishing of water to the public; for the construction, re-. pair or improvement of highways, streets or lanes or the paving, curbing or erection of gutters along the same; for the construction or repair of sewers or sewage disposal equipment; or to defray the cost or the share of the town of the cost of any permanent municipal improvement; Provided, however, that the borrowing of the money therefor shall have been authorized by the Town Council and shall have been approved by the electors in the manner and at the time following."

The act then proceeds to point out with meticulous detail the steps that must be taken to obtain the approval of the electors of the Town before any money shall be borrowed and provides that the bonded indebtedness shall not at any time exceed 15% of the value of the real property within the limits of the Town.

It is difficult to exactly determine what reliance is placed by the plaintiff upon the statute now being considered. In its brief it is stated "in the procedure followed by the Town in the acquisition of its plant from the Seaford Light and Power Company there is nothing calling for the application of Section 4 of this Act." On the other hand, the plaintiff contends that the word "erection," as expressed in the act, clearly includes the right to purchase a plant, and has submitted authorities to this effect. We think it incumbent on us to give some consideration to the act. It may be pointed out, in limine, that no money was borrowed under the provisions of the act for the acquisition of the plant, and to that extent the act is not material. It was the failure to precisely follow the statutory method prescribed

by the act that resulted in the decision of *Eastern Shore Public Service Co. v. Town of Seafod,* 21 *Del. Ch.* 214, 187 *A.* 115.

The act is, however, a clear legislative recognition of the right of the Town to have an electric light plant. The act provides for the borrowing of money for the "erection, the extension, the enlargement or the repair of any plant." The question is presented as to whether this provision would embrace the power to purchase an existing plant. The plaintiff has cited *Quinby v. Consumers' Gas Trust Co.,* (*C. C.*) 140 *F.* 362, and *City of Indianapolis v. Consumers' Gas Trust Co.,* (7 *Cir.*) 144 *F.* 640. The defendant, in contending that authority for the "erection" does not include authority to purchase, cites *City of Austin v. McCall,* 95 *Tex.* 565, 68 *S. W.* 791, and *Barker v. Town of Floyd,* 32 *Misc.* 474, 66 *N. Y. S.* 216.

The first of these latter cases is, we think, clearly distinguishable upon the facts, but the Barker case must be given some consideration. The Town of Floyd had purchased a property for use as a town house. There were two statutes having materiality. One was a special act passed in 1865 which by its title authorized the Town of Floyd to "erect" a town hall, and by the body of the act authorized the Town to "construct" the hall. Another general law applicable to all towns not having a town house was passed in 1890, and stipulated certain procedure to be followed. The Town in 1898 decided to purchase a property for a town house, on which property there was a building. The lower court (66 N. Y. S. 216) construed only the special Act of 1865 and held that the power to erect a building did not include the power to purchase one for use. The court said the power to "erect" would include a power to purchase a site and a building might be located thereon, and that the materials of the building could be used in the erec-

tion of a new town house, but that the site and building could not be purchased if it was intended to use the building as a town house. On appeal (61 App. Div. 92, 69 N. Y. S. 1109) the Appellate Court did not mention the opinion of the court below or the grounds on which it was based. The Appellate Court held that the Act of 1865 was repealed by the general Act of 1890. It is difficult to see that anything is left of the former opinion other than a hypothetical expression of opinion. The Appellate Court held that at the time the lower court construed the Act of 1865, no such act existed, but that it had been repealed by the general Act of 1890. Regardless of the appellate decision, we are not disposed to follow the reasoning of the lower court. A statute must be reasonably construed with some amount of realism. Power to "erect" must include power to acquire the site, power to contract for or otherwise obtain the materials, and power to "erect" those materials. It is common knowledge that in works of any magnitude most public bodies do not do the actual construction work themselves, but enter into contracts for completed structures, leaving to the main contractor the question of sub-contracts. To us it is an undue refinement to say that the "erection" of a building, under such a statute as here involved, would be authorized by receiving a completed building from a contractor at a contract price, but that an exactly similar completed building could not be acquired from an owner thereof. We think the power to erect the plant, under statute, included the power to purchase an existing plant and adapt it to the desired uses.

The defendant contends that the Town had no power to acquire the light plant in any manner other than set out in Chap. 25 of Vol. 39, which, it is claimed, is exclusive; that the acquisition of the plant must be considered in connection with the statutory debt limit appearing in the

Charter. The plaintiff denies that the indicated method is exclusive, or that any debt limit as mentioned in the Charter is at all involved. There is thus presented the legality and applicability of what, for want of a better name, has been called the "Special Fund Doctrine." Space does not permit even the citation of the many cases dealing with municipal improvements obtained solely from special assessments or acquisition of municipal property or utilities solely from special funds. The cases are largely collected in exhaustive notes in 72 *A. L. R.* 687; 96 *A. L. R.* 1385; *Fairbanks, Morse & Co. v. City of Wagoner, Okl.,* (10 *Cir.*) 81 *F.* 2d 209; and in *McQuillen Municipal Corporations, 2d Ed., Sec.* 2389. The great weight of authority is to the effect that no question is raised as to statutory debt limitation by municipal purchasing of property to be paid for wholly out of the income or revenue to be derived from the property purchased. The debt limitation mentioned in the Charter is concerned with any indebtedness for which the Town of Seaford may in any manner become liable, or for the payment of which the taxes of the town may in any way be used. The contract of October 15, 1938, provides the purchase price of the plant shall be paid "only out of net revenues derived from the operation of said plant and distribution system." It is also provided:

"It is expressly agreed by and between the parties hereto that it is of the essence of this agreement that no indebtedness or any obligation or duty on the part of the Town of Seaford shall be created or inferred by this agreement which may require payment by the Town of Seaford of the sums above stated or any part thereof, from taxes or general funds or constitute an indebtedness of general obligation within the meaning of or be in anywise in contravention of the Constitution or laws of the State of Delaware."

██ It is our opinion that the method of acquisition of an electric plant as set out in the Charter is not an exclusive method.

██ The defendant contends that the Special Fund Doctrine may only be applied to a municipality when authorized by legislative enactment. We think a municipality, in most instances, has a dual function. It has its governmental function or duties, and also its proprietary or business side. The Town of Seaford has been authorized, we think, to act in a proprietary sense and sell the product of its utilities, if any, to the citizens of the Town. Taxes ordinarily can only be imposed and expended for governmental purposes, and around this principle are thrown many safeguards, such as the requirement of a vote of the people to authorize a departure from such principle, and often there exists a constitutional or statutory debt limit to protect the people from their own improvidence. When, however, the city in its proprietary or business relation desires to make a purchase for which neither the funds or the credit of the Town are in any way involved, but the cost of which purchase is solely derived from the income of the thing purchased, then we think this Special Fund Doctrine has application. Of course, if a city already owns an electric plant and purchases therefor more equipment, it cannot take the proceeds of the plant and use it as a "special fund" to pay for such equipment. In such case the special fund belongs to the Town and is not created exclusively from the newly purchased property. Sec. 31, Mich. Law Review, 507. We see no reason why the special fund theory or doctrine can not be applied in such case as the present.

██ The defendant contends the Special Fund Doctrine can never be applied when any general tax money of the town is supplied to the special fund, or the special fund is increased in any way by general funds of the municipal-

ity. With this we agree, and it is because we can find no evidence that the special fund consists of anything besides the income from the special property acquired, that we have sustained the theory of such special fund. The defendant, however, claims that there are, at least, two particulars in which the general funds of the town contributed to or entered into the calculation of the special fund. It appears that some time prior to the contract between the Town and the Seaford Power and Light Company that the Town had incurred an indebtedness of some $4,400 to Gibbs & Hall, for engineering services in exploring the needs of the Town with reference to a lighting system. This was subsequently assumed by the Seaford Power and Light Company, and included in the total cost of the plant. Later it was withdrawn from such total cost and was paid by the Town from its own funds. The bill was created before the Seaford Power and Light Company had anything to do with the Town of Seaford, and it is not shown that the service entered in any way into the computation of the cost of the plant, or that the result of the services were utilized in any way in the establishment of the plant. We think the item has nothing to do with the present suit. The defendant also contends that because certain real estate and office space belonging to the Town were used by the Seaford Power and Light Company, that such items were donated to the special fund. It is pointed out, however, that there is no obligation on the Town with reference to the items, and that a rental, which is not shown to be inadequate, was charged for the items, and is paid from the income of the plant into the general funds of the Town. We do not think the items represent any contribution to the "Special Fund."

The defendant contends that the same two items of engineering costs and use of real estate of the Town make

the contract violative of Art. 8, Sec. 8 of the Constitution of Delaware, which provides:

"No * * * town * * * shall lend its credit or appropriate money to, or assume the debt of, or become a shareholder or joint owner in or with any private corporation or any person or company whatever."

From the above facts the defendant contends that the Town has extended its credit to the company, and that from the fact that the profits of operation will reduce the purchase price of the plant that the city is a joint adventurer with the company in the enterprise.

We have indulged in a slight discussion of the items and can discern no element of joint adventure. The Town has exercised an option to acquire the plant, and this purchase was made upon conditional sale, whereby the title remains in the vendor until paid for. We see no violation of the constitutional provision.

We now approach the consideration of the question of damages. The plaintiff has sued upon three supersedeas bonds, No. 1 for $5,000, No. 2 for $2,500, and No. 3 for $8,500.

The bonds contain substantially the same condition, the difference being the period to which they refer. Bonds Nos. 1 and 2 recite the decree of the Court of Chancery of the State of Delaware, dated November 30, 1937, and the appeal therefrom by the defendant herein. The condition is that the appellant (defendant herein) "shall appear * * * and prosecute their appeal with effect, and pay all costs, or otherwise abide the decree in appeal, if they fail to make their appeal good, and shall pay the whole amount of such damages as the complainant may suffer by reason of the

stay of the execution of the decree entered in the above stated cause dated November 30, 1937 * * *."

On July 28, 1938, the Supreme Court of Delaware affirmed the decree of the Chancellor, dated November 30, 1937. The Supreme Court granted a stay in order that the defendant herein might, by appeal or certiorari, have the decision reviewed by the Supreme Court of the United States. Bond No. 3 was given in connection with these latter proceedings, but the condition, except for the appropriate changes, remained the same.

On October 15, 1938, the Town of Seaford exercised its option to purchase the plant.

Substantially, therefore, the damages which the plaintiff seeks cover two periods:

1. The period from the date of the Chancellor's decree of November 30, 1937, to the exercise by the Town of its option to purchase, on October 15, 1938.

2. The period subsequent to October 15, 1938.

The plaintiff contends that because the ultimate purchase price of the plant, if purchased by it, would be reduced by net earnings from consumers, so this loss of net earnings would be recoverable where the defendant herein, by reason of the appeal, and by reason of its continuance in the Town as a competitor, sold electric current to consumers. The plaintiff, for a similar reason, contends that expenses and taxes which the Seaford Power and Light Company paid between the date of the appeal from the decree of November 30, 1937, and the acquisition of the plant by the Town, reduced the net earnings, and thereby increased the cost of the plant to the Town, and are therefore recoverable as damages. The plaintiff contends that the appeal by the defendant herein operated to prevent

the acquisition of the plant by the Town, and that the taxes and expenses, while chargeable against the Seaford Light and Power Company as a private corporation, would not have been chargeable in case of municipal ownership. The plaintiff also claims counsel fees paid by it in resisting the appellate proceedings, and also loss of net earnings after the acquisition of the plant by the city.

A summary of the plaintiff's claim is as follows:

For period between Nov. 30, 1937 and October 15, 1938:

```
Loss of net earning from subscribers......$ 6161.90
Counsel fees ........................... 500.00
Expenses .............................. 184.85
Taxes (general) ....................... 1324.00
 " (manufacturing excise) .......... 1106.10
 " (unemployment) .................. 135.92
 " (old age welfare)................ 151.70
 " (Federal capital stock).......... 305.00
 " (Federal income) ................ 3416.44
Traveling expenses ..................... 278.91
 ─────────
 $13564.82
```

For the period after October 15, 1938:

```
Loss of net earnings from consumers........$1655.23
Counsel fees ........................... 1000.00
Expenses .............................. 114.56
 ─────────
 $2769.79
```

We prefer to treat the liability of the supersedeas bonds with reference to these claims in three groups, and in the following order:

(a) Liability for counsel fees.

(b) Liability for loss of earnings and expenses prior to the acquisition of the plant by the Town.

(c) Liability for loss of earnings and expenses subsequent to the acquisition by the Town.

 (a) We are of the opinion that counsel fees are not recoverable in a suit on a supersedeas bond given in an ordinary civil or equity proceeding where the condition of such bond is to pay "the whole amount of such damages" or "answer all damages" which the appellee might suffer by reason of the appellate proceedings. We are not here concerned with any question of injunctive or attachment proceedings, which seem to stand upon a somewhat different footing. While the question has never been decided in Delaware, yet we know of no instance where such allowance has been made. In other jurisdictions, except for Alabama, the cases seem to be uniform that in ordinary civil or equity cases counsel fees are not allowed as damages in suits on supersedeas bonds. *Vestel v. Eagerton,* 92 *Fla.* 215, 109 *So.* 456; *Hughan v. Grimes,* 62 *Kan.* 258, 62 *P.* 326; *Higgins v. J. I. Case Threshing Mach. Co.,* 95 *Neb.* 3, 144 *N. W.* 1037; *Milwaukee Corrugating Co. v. Flagge,* 180 *Wis.* 274, 193 *N. W.* 69; *Williams v. Fidelity & Deposit Co.,* 42 *Colo.* 118, 93 *P.* 1119, 15 *Ann. Cas.* 722, 723, and note.

 (b) We now come to the question of loss of net earnings and expenses during the period from November 30, 1937 to October 15, 1938.

The defendant contends that the loss of profits or net earnings is too remote and not within the contemplation of the parties; that while the Town has exercised its option to purchase, yet it is still only the conditional vendee of the

plant and that, under the contract, it will not become the owner of the plant until at least 1946 and that, until then, the Town has no right of action for the loss of net earnings, and also that there can be no recovery of loss of net earnings before the Town exercised its option, viz., October 15, 1938.

We are not prepared to say that a conditional vendee may not sue a third person for injuries to or matters covering the subject matter of the conditional sale, or that such suit remains solely with the conditional vendor. We shall subsequently point out that until the exercise of the option to purchase, on October 15, 1938, the Town was not a conditional vendee. We are likewise unable to say that the loss of profits or net earnings, as such, may not be the subject of recovery in such a case as this. The denial of recovery on the ground of remoteness involves other principles.

Both parties cite with confidence the rule of damages laid down in *Hadley v. Baxendale,* 9 *Exch.* 341, 153 *Eng. Rep.* 145, and cited in this State in *Wise v. Western Union Tel. Co.,* 7 *W. W. Harr.* (37 *Del.*) 209, 181 *A.* 302, 305. That rule, as we understand it, is

"Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect to such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things, from such breach of contract itself or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it."

The parties have disagreed as to whether, under this rule, the question of loss of profits or net earnings was

within the contemplation of the parties. We are not clear that that portion of the rule relating to damages being within the contemplation of the parties has anything to do with this case. In *Hadley v. Baxendale,* and most of the cases adopting it, the language of the contract was a matter determined by the minds of the contracting parties, and the contemplation of those parties was necessarily an important consideration. In this case the damages, if any, flow from the construction of the condition of the supersedeas bond, and this condition was fixed by the court, in conformity with the rule and practice. It may well be that the question of loss of profits or net earnings as damages should be determined as a question of law, as we have heretofore determined the question as applying to counsel fees, or that the other provision of *Hadley v. Baxendale* would apply, viz., such damages as may fairly and reasonably be considered as arising naturally according to the usual course of things, from the breach.

The plaintiff contends that recovery of damages for loss of profits or net earnings prior to the time the Town exercised its option to purchase (October 15, 1938) is not too remote because it says that the defendant knew of the option and the failure to exercise the option at an earlier date was entirely attributable to the appeal. The plaintiff has, over objection, offered in evidence the testimony of each member of the Town Council to the effect that, except for the existence of the appeal, that each would have voted at an earlier date for a resolution exercising the option, and the testimony of the Mayor that he would have approved such resolution. The admissibility of this evidence is very doubtful but in view of our conclusion we shall not pause to discuss the legal question. In view of the testimony that each member of council would have voted for the exercise of the option, except for the appeal, accom-

panied by the fact that they did not so vote, it would seem that the failure to so vote and exercise the option may well have been caused either by a feeling of doubt in the correctness of the Town's position, or by an affirmative desire that the legality of the ouster proceeding should be settled before definitely committing the Town by exercise of its option. The important thing is that the Town authorities did not so vote until October 15, 1938. There was nothing in the course of the litigation then pending to prevent the vote of the Town to exercise the option. No injunctive process prevented such action by the Town, such as existed in the case of *Waycross Air Line R. Co. v. Offerman & W. R. Co.*, 114 *Ga.* 727, 40 *S. E.* 738, cited by the plaintiff. Until the Town exercised the option it was not a conditional vendee, or bound in any way, and it clearly desired to see that, insofar as possible, no legal impediment existed before committing the Town to the purchase.

No distinction is clearly discernible between the two periods during which the stays were issued, but the action of the Town was exactly opposite. When the original decree of November 30, 1937, was entered and appeal taken, the Town took no action until the affirmance of the decree by the Supreme Court of Delaware. Immediately upon this affirmance, and on October 15, 1938, the Town exercised its option, notwithstanding the stay of the action of the Supreme Court, which was granted pending the application for appellate proceedings to the Supreme Court of the United States. The same action that was taken on October 15, 1938, could have been taken at any time after the decree of November 30, 1937, and the exercise of the option by the Town is, in our opinion, the crucial time from which rights of the Town became operative. It was then that the Town became conditional vendee and had definite legal rights on the subject matter. We are of the opinion that loss of

profits or net earnings prior to October 15, 1938, the date of the exercise of the option, are not recoverable in this proceeding.

Upon an entirely different footing stands the question of loss of profits or net earnings after the exercise of the option by the Town on October 15, 1938. After that date the Town became the conditional vendee of the plant and directly interested in the amount of earnings of the plant. The continuance of the defendant as a competitor in the sale of electric current had a direct and immediate effect upon the Town. We think the loss of profits or net earnings after October 15, 1938, are recoverable. By stipulation this amount is fixed at $1,655.23.

The plaintiff also seeks to recover $114.56 as expenses paid after October 15, 1938, and itemizes such amount in the Bill of Particulars. These figures seem to be (a) legal printing, $66.01; (b) traveling expenses of counsel or his associate, $37; (c) telephone, $7.05; (d) recording contract, $4.50. We have no information as to this last small item, but the other items seem to fall within the same category and be subject to the same observations as we have heretofore expressed with reference to counsel fees.

The result of the foregoing opinion is that defendant's motions Nos. 1A, 1B, 2, 3 and 4 are refused; 5 and 9 are refused in part; No. 7 is removed from consideration; No. 6 is granted, as is also the effect of No. 8; Nos. 10 and 11 are unnecessary to determine.

Judgment will be entered in favor of the plaintiff for the sum of $1,655.23.