## Charles Blanchard v. The Village of Benton.

1. EVIDENCE—*Prima Facie Evidence of Passage and Publication of Ordinances.*—An ordinance is admissible as evidence under section 82, chapter 24, R. S., when it is recorded in a book kept for such purpose, and where, at the close of the record of such ordinance, there is a memorandum of the date of the passage and publication or posting of such ordinance.

2. CITIES AND VILLAGES—*Power of City to Light Streets Includes Power to Acquire a Plant for that Purpose.*—Section 62, chapter 24, R. S., provides that cities and villages shall have power to provide for the lighting of streets, alleys, avenues, sidewalks, wharfs, parks and public grounds, and the power of a city to light its streets includes the power to acquire by purchase or building, a plant for such purpose.

3. SAME—*Fact that City Puts Lighting Plant to Unlawful Use Does Not Invalidate Bonds Issued for its Erection.*—The fact that a city, after its municipal lighting plant is in operation, puts it in whole or in part to an unlawful use, can not relieve the city from paying the bonds issued for its erection.

4. ORDINANCES—*Courts Will Give Them an Interpretation Which Will Validate Rather than Overthrow Them.*—Where an ordinance is clearly susceptible of an interpretation in full accord with the law, though it might be susceptible of another or broader interpretation, courts will give it that which will validate rather than that which will overthrow it, and all innocent parties acting under or with reference to such ordinance are warranted in so interpreting it.

5. MUNICIPAL INDEBTEDNESS—*Outstanding Warrants Do Not Constitute, Within Meaning of the Constitution.*—Outstanding warrants or orders issued or drawn by a municipality against cash in the treasury, or specifically payable out of a fund to arise from a tax which has been actually levied, do not constitute an indebtedness within the meaning of the constitutional inhibition.

6. SAME—*Accruing Interest Not a Part of Indebtedness Within*

*Meaning of Constitutional Provision for Limit of Indebtedness.*—
Accruing interest upon municipal indebtedness is a mere incident of
the principal, and not to be reckoned as part of the indebtedness within
the meaning of the constitutional inhibition.

Assumpsit.—Error to the Circuit Court of Franklin County; the
Hon. ENOCH E. NEWLIN, Judge presiding. Heard in this court at the
February term, 1903. Reversed and remanded. Opinion filed September 10, 1903.

GEORGE A. HICKMAN and WOOD & OAKLEY, attorneys for
plaintiff in error.

The records of the proceedings of a municipal corporation
when they are required by law to be kept, import absolute
verity; and in a collateral proceeding, after the rights of
innocent third parties have arisen, parol testimony is inadmissible to impeach them.    O'Connell v. Chicago Terminal
T. R. R. Co., 184 Ill. 308; People v. Madison Co., 125 Ill.
334; Galbraith v. Littiech, 73 Ill. 209; 2 Beach Mun. Corporations, Secs. 1298, 1299; Tiedeman Mun. Corporations,
Sec. 108 *ad fin.;* Dillon Mun. Corporations, Sec. 299.

In Illinois, in estimating the amount of indebtedness outstanding against a municipal corporation, warrants may be
ignored, because unless they are drawn against a fund collected or in process of collection, they are void; and if they
are drawn against a fund collected or in process of collection, they impose no obligation upon the municipality.
Law v. The People, 87 Ill. 385; City of Springfield v.
Edwards, 84 Ill. 626.

Interest (whether evidenced by coupons or not) accruing
upon municipal indebtedness is but an incident thereto, and
is to be excluded in computing the amount of indebtedness
that the municipality may, under constitutional or statutory
limitations, incur.    City of Ashland v. Culbertson, 103 Ky.
161; Herman v. City of Oconto, 110 Wis. 660; Durant v.
Iowa Co., Woolw. 69; Finlayson v. Vaughn, 54 Minn. 331.

A municipal corporation, because it is a municipal corporation, has implied authority to light its streets, and to
acquire and to operate a municipal lighting plant to that
end, even though its charter confers no such power.

Unquestionably, then, a municipal corporation of Illinois,

which by law is given express authority to light its streets, must be held to possess the power to light its streets and to acquire and to operate a municipal lighting plant to that end. Lake Charles Ice, Light & W. W. Co. v. City of Lake Charles, 106 La. 65; Crawfordsville v. Braden, 130 Ind. 149; Gas Company v. Rushville, 121 Ind. 206; Ellinwood v. Reedsburg, 91 Wis. 131; Heilbron v. Cuthbert, 96 Ga. 312; 1 Dillon Mun. Cor., Par. 146 (4th Ed.).

If the proximate purpose of a municipal ordinance is a proper corporate purpose of the municipality, the ordinance is valid notwithstanding that it may subserve a secondary and incidental purpose which is beyond the scope of the municipal character. Lucia v. Eaton, 60 Vt. 537; Bates v. Bassett, 60 Vt. 530; Bell v. City of Platteville, 71 Wis. 139; City of Austin v. Nalle, 85 Tex. 520; Pike's Peak Power Co. v. City of Colorado Springs, 105 Fed. Rep. 1; State v. City of Eau Claire, 40 Wis. 533; Camden v. Village Corporation, 77 Me. 530–537; Worden v. City of New Bedford, 131 Mass. 23.

A municipal corporation which owns and operates a public electric lighting system may lawfully vend electrical current to its citizens for commercial and domestic lighting. Thompson-Houston Electric Co. v. The City of Newton, 42 Fed. Rep. 723 ; City of Crawfordsville v. Braden, 130 Ind. 149 ; Ellinwood v. City of Reedsburgh, 91 Wis. 131 ; Parkersburg Gas Co. v. City of Parkersburg, 30 W. Va. 435 ; Smith v. Mayor of Nashville, 88 Tenn. 464; Jacksonville Electric Light Co. v. The City of Jacksonville, 36 Fla. 229.

W. F. Spiller and W. H. Hart, attorneys for defendant in error.

Mr. Presiding Justice Creighton delivered the opinion of the court.

This was an action of assumpsit, in the Circuit Court of Franklin County, by plaintiff in error against defendant in error. Jury waived. Trial by the court without a jury. Finding and judgment in favor of defendant in error.

The declaration in effect alleges, that on the 3d day of January, 1893, the president and trustees of defendant duly passed an ordinance as follows.:

"Be it ordained by the president and trustees of the village of Benton, in the county of Franklin and State of Illinois:

Section 1. That the village of Benton purchase from the General Electric Company of Chicago, Illinois, a complete plant for the purpose of lighting the village of Benton aforesaid with electric light, for the sum of five thousand dollars ($5,000).

Section 2. That to provide funds wherewith to purchase an electric light plant, as provided in section 1 of this ordinance, and pay for the same, the village of Benton issue ten bonds of the denomination of five hundred dollars each, payable to the bearer fifteen years after the date thereof and payable at the option of said village after five years, and within fifteen years, at the office of the treasurer of the village of Benton; said bonds to bear interest at the rate of six per cent per annum, payable semi-annually at the office of the treasurer of said village of Benton; that the president of the board of trustees of the village of Benton and the clerk of said village are hereby authorized and directed to execute said bonds.

Section 3. That there be appropriated out of the funds appropriated for current expenses for the fiscal year beginning June the 1st, 1892, the sum of one hundred and fifty dollars ($150) for the purpose of paying the interest that may accrue on the bonds provided for in section 2 of this ordinance for the first six months.

Section 4. That there be levied and collected a direct annual tax on all taxable property within the corporate limits of the village of Benton aforesaid, sufficient to pay the interest on the said bonds mentioned and described in section 2 of this ordinance as the same becomes due and payable; and also to pay and discharge the principal of said bonds within fifteen years after date thereof, in the following amounts, to wit:

For the fiscal year commencing June 1st, 1893, the sum of three hundred dollars; for the fiscal year commencing June 1st, 1894, the sum of three hundred dollars; for the fiscal year commencing June 1st, 1895, the sum of three hundred dollars; for the fiscal year commencing June 1st, 1896, the sum of three hundred dollars; and for the fiscal year commencing June 1st, 1897, the sum of three hundred

Blanchard v. Village of Benton.

dollars. For the fiscal year commencing June 1st, 1898, the sum of eight hundred dollars, being the interest on the outstanding bonds and principal of one of the said bonds; for the fiscal year commencing June 1st, 1899, the sum of seven hundred and seventy dollars, being the interest on the outstanding bonds and for the principal of one of said bonds; for the fiscal year commencing June 1st, 1900, the sum of seven hundred and forty dollars, being the interest on the outstanding bonds and for the principal of one of said bonds; for the fiscal year commencing June 1st, 1901, the sum of seven hundred and ten dollars, being the interest on the outstanding bonds and for the principal of one of said bonds; for the fiscal year commencing June 1st, 1902, the sum of six hundred and eighty dollars, being the interest on the outstanding bonds and for the principal of one of said bonds; for the fiscal year commencing June 1st, 1903, the sum of six hundred and fifty dollars, being the interest on the outstanding bonds and for the principal of one of said bonds; for the fiscal year commencing June 1st, 1904, the sum of six hundred and twenty dollars, being the interest on the outstanding bonds and for the principal of one of said bonds; for the fiscal year commencing June 1st, 1905, the sum of five hundred and ninety dollars, being the interest on the outstanding bonds and for the principal of one of said bonds; for the fiscal year commencing June 1st, 1906, the sum of five hundred and sixty dollars, being the interest on the outstanding bonds and for the principal of one of said bonds; for the fiscal year commencing June 1st, 1907, the sum of five hundred and thirty dollars, being the interest on the outstanding bonds and for the principal of one of said bonds."

That in pursuance of the purpose and provisions of this ordinance defendant issued ten municipal bonds, for the sum of $500 each, payable at the option of defendant after five years and within fifteen years, bearing interest from February 1, 1893, at the rate of six per cent, payable semi-annually, installments of interest to accrue being evidenced by attached coupons for the sum of $15 each; and that plaintiff as an innocent purchaser for value, before maturity, became the owner and holder of certain of these coupons, which, having matured, the defendant refuses to pay.

To this declaration defendant filed a number of pleas, setting up as defenses the following: (1) That there was no

ordinance authorizing the issuance of the bonds; (2) that there was no authority in 1893 under the laws of this state authorizing villages to own and operate an electric light plant; (3) that if there was authority to issue the bonds and own and operate a plant to light the streets, still, the bonds are void, because the plant was used to furnish light to private consumers for the purpose of deriving revenues therefrom; (4) that there was no provision in the ordinance for the levying of an annual tax to pay the whole of the debt and interest, (5) and that the indebtedness existing, together with the bonds, exceeded the constitutional limit.

Defendant's claim that there was no ordinance authorizing the issuance of the bonds, is based upon the contention of counsel that the proof of the ordinance set up in the declaration is not sufficient.

Upon the trial of the case in the Circuit Court plaintiff called as a witness J. M. Adams, the clerk of the village and custodian of its records. The witness produced and identified the record book in which the ordinances of the village were recorded. This record contained the ordinance set up in the declaration, at the end of which and as a part of the record was the following:

"Passed January 3rd, 1893. Approved January 4th, 1893. W. W. Whittington, President of Village Board; J. M. Adams, Village Clerk. (Village Seal.) Published January 13th, 1893."

After making this proof counsel for plaintiff offered the record in evidence.

Counsel contended that this proof was insufficient to establish the ordinance and warrant its admission in evidence. They insist that it fails for want of a certificate of the clerk as to publication, and cite Hutchison v. City of Mt. Vernon, 40 Ill. App. 20, and Lindsay v. Chicago, 115 Ill. 123. These cases have no application to the section of the statute under which proof was made in this case. They discuss the requisites of Sec. 4, Art. 5 of the City and Village Act, Sec. 65, Chap. 24, Hurd's R. S. 1901. In Hutchison v. City of Mt. Vernon, above cited and espe-

cially urged upon us as controlling in this case, what was claimed to be the original ordinance, the original document, was offered, under the first clause of the above cited section of the statute, but not being certified to as that clause of the statute requires, the proof was held insufficient.

The proof in this case was made under Sec. 11, Art. 6, of the Act. Sec. 82, Chap. 24, Hurd's R. S. 1901. That section is:

" The clerk shall record, in a book to be kept for that purpose, all ordinances passed by the city council or board of trustees. and at the foot of the record of each ordinance so recorded shall make a memorandum of the date of the passage and publication or posting of such ordinance, which record and memorandum  *  *  *  shall be *prima facie* evidence of the passage and legal publication or posting of such ordinances for all purposes whatever."

This ordinance and all that pertained to its validity had been made matter of record in the manner required by the statute, and the statute makes it mandatory upon the courts to accept such records as *prima facie* evidence of the due passage and publication.

It is further suggested by the counsel that the evidence shows that the words "Approved January 4th, 1893," as they appear in the record of the ordinance, are in a different handwriting from that of the clerk who wrote the record, and were written in at a different time, and they say, therefore, the record should not have been admitted in evidence. We are of opinion this is of no consequence. There is nothing in the evidence tending to prove that these words were fraudulently inserted in the record or that their presence there makes the record speak other than the truth, and then the statute above quoted, under which the proof in this case was made, does not require any memorandum of such approval to be made by the clerk, but only requires him to make memorandum of the date of passage and of the publication or posting of such ordinance. So if the words challenged be rejected, it would not affect the availability or sufficiency of the record as *prima facie* evidence.

We are of opinion counsel's proposition that under the

laws of this state a city or village could not own and operate a lighting plant for the purpose of lighting its streets and public places, is not well taken. The statute of 1872 provides that cities and villages shall have power to provide for the lighting of streets, alleys, avenues, sidewalks, wharfs, parks and public grounds. Sec. 1, Art. 5, City and Village Act; Sec. 62, Chap. 24, Hurd's, 1901. " The power of a city to light its streets includes the power to acquire by purchase or building, a plant for such purpose." Hay v. City of Springfield, 64 Ill. App. 671.

Counsel contend that in any event the bonds were void because the evidence shows that appellee's plant was used not only to light the streets and public places of the village, but to furnish light to private consumers for the purpose of deriving revenue therefrom.

The ordinance under which the bonds were issued and sold, and the plant established, provides that the village of Benton shall purchase " a complete plant for the purpose of lighting the village of Benton aforesaid with electric light," and this is the only provision in the ordinance concerning the purpose or use to which the plant should be put. It is not necessary for us to discuss the question as to the power of the city to own and operate a plant for the purpose of furnishing light to private consumers, for revenue. Appellant had the power to provide itself with an electric lighting plant for the purpose of lighting its streets and public places, and there is nothing in the language of the ordinance to put a purchaser of the bonds upon notice of any purpose, if such there was, to devote the proposed plant to other than lawful uses. The ordinance is clearly susceptible of an interpretation in full accord with the law, and in such case, though it might be susceptible of another or broader interpretation, courts will give it that which will validate rather than that which will overthrow it, and all innocent parties acting under or with reference to such ordinance are warranted in so interpreting it. Harmon v. City of Chicago, 140 Ill. 374; Berry v. City of Chicago, 192 Ill. 154. The fact, if it be a fact, that appellee, after its plant was in operation, put it in

whole or in part to an unlawful use, can not relieve appellee from the duty to pay the innocent purchaser of its bonds.

As to counsel's contention that the bonds are void for want of a provision in the ordinance for the levying of an annual tax to pay the debt and interest, as required by statute, it is only necessary to inspect sections 3 and 4 of the ordinance above quoted and make the computations on the proper basis. The statute has been fully and strictly complied with.

Finally, it is contended that the bonds are void because at the time of their issue the existing indebtedness of appellee, together with the bonds, exceeded the constitutional limit of five per cent.

The assessed valuation of appellee as equalized for the year 1892, was $109,001. This gave it a debt-carrying capacity of $5,450.05. Previous to February 1, 1893, the day the bonds bear date, there had been made the tax levy of the year 1892. How much of this levy had on February 1, 1893, been collected and turned into the village treasury the evidence does not disclose, but there was on that date $496.20 in the treasury. Against the fund to arise from the tax levy of 1892, there had been drawn orders as follows: October 3, 1892, $100. December, 1892, $400.20. The last named of these orders contained the provision, "payable out of the taxes levied in 1892, when collected in 1893," and the other contained words to the same effect. Whether both or either of these outstanding orders had been paid before February 1st is not material. Outstanding warrants or orders issued or drawn by a municipality, against cash in the treasury, or specifically payable out of a fund to arise from a tax which has been actually levied, do not constitute an indebtedness within the meaning of the constitutional inhibition. City of Springfield v. Edwards, 84 Ill. 626; Law v. People, 87 Ill. 385.

Counsel for appellee contend that there was another item of indebtedness to the amount of $856.98 outstanding at the date of the bonds, but in our opinion the evidence does not warrant this contention. There appears in the record of

the village a report of a special committee, made to the
president and trustees at a meeting of the board, on April
22, 1893, a statement that the committee had found it
necessary to make two additional contracts on December
31, 1892, for feeders and lamps, aggregating $856.98, pay-
able out of the taxes of 1893, and recommends that the
claim be audited.  The evidence does not show that this
committee was authorized by the board to make such con-
tract, nor does it show that the board approved its acts in
that respect, nor that this transaction was ever carried out,
nor that any claim concerning it was ever audited or paid,
nor that any such claim is still outstanding.  This is all
there is in the record as to that item and it falls far short
of establishing it as an item of indebtedness, existing on
February 1, 1893.  It proves no more than that on the
22d of April, 1893, almost two months after the date of
the bonds, a committee reported to the board that on
December 31, 1892, they had concluded negotiations for
the purchase of the articles mentioned, on the terms men-
tioned, subject to the approval of the board, and as above
stated, there is no evidence that the board ever approved.
Even if the board did at that time approve the action of the
committee, the indebtedness incurred thereby, as between
the bondholders and all others, would be subsequent to the
bond indebtedness.

And further upon this branch of the case, counsel insist
that the interest coupons attached to the bonds constitute
an indebtedness, and instead of the debt for the lighting
plant being $5,000, it was $9,500.

We are of opinion that accruing interest upon municipal
indebtedness is a mere incident of the principal, and not to
be reckoned as part of the indebtedness within the mean-
ing of the constitutional inhibition.  We know of no hold-
ing of the courts of this state bearing directly upon this
question, but our view accords with the common under-
standing and common sense of the situation.

We find that there is material and reversible error in this
record.  The judgment of the Circuit Court is reversed and
the cause remanded.