BELLE C. SARGENT v. A. M. FULLER.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON
PLEAS NO. 4 OF PHILADELPHIA COUNTY.

Argued January 14, 1890—Decided February 3, 1890.
[To be reported.]

1. Where a judgment defendant is believed to be the real owner of shares
of stock which are held in another name than his own, the creditor has
the right to try the title thereto by proceedings in the nature of an at-
tachment, under §§ 32, 33, act of June 16, 1836, P. L. 767.
2. After judgment in such case for the garnishee, the attaching creditor,
in the absence of allegation and proof of a malicious abuse of the pro-
cess, is not liable to the garnishee, in whose name the shares are held,
for a depreciation of the value thereof pending the attachment.
3. Moreover, as in case of perishable property, an order might be made,
pending the proceedings, for the sale of the shares; or, when they are
held in the name of a wife, a motion to dissolve might be successful,
on a proper showing that the shares were of the separate estate of the
wife: Per Mr. Chief Justice PAXSON.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, Mc-
COLLUM and MITCHELL, JJ.

No. 424 January Term 1889, Sup. Ct.; court below, No 322
March Term 1884, C. P. No. 4.

On May 3, 1884, " Samuel J. Sargent and Belle C. Sargent,
his wife, who was formerly Belle C. Fuller, in right of the
said Belle C. Sargent, trustee," brought case against Alfred
M. Fuller. On June 28, 1888, the plaintiffs filed a statement
of claim averring in substance :

That prior to December, 1879, the plaintiff, then Belle C.
Fuller, the wife of James Fuller, was the owner of 1,300 shares
of the capital stock of the Algonquin Company, a mining or-
ganization, said shares standing on the books of the company
in the name of Belle C. Fuller, trustee ; that on December 2,
1879, Alfred M. Fuller, the defendant in this case, holding
two several judgments against said James Fuller, aggregating
in amount over $28,000 caused to be issued thereon, under
§§ 32, 33, act of June 16, 1836, P. L. 767, processes in the

nature of attachments, under which writs the sheriff attached said 1,300 shares of stock, summoning the said corporation and said Belle C. Fuller as garnishees; that afterwards, upon a trial of said attachment proceedings in open court, verdicts were rendered and judgments entered in both of them in favor of the garnishees, which judgments were standing as the final judgments of the court; that at the time of issuing said attachments, the plaintiff therein, the defendant herein, well knew the fact that the shares of stock attached were the property of the plaintiff herein, and caused said attachments to be issued maliciously and for the purpose of preventing a sale and transfer of said stock upon the books of the company; that at the time said attachments were executed the stock had a selling value of $30 per share, and in consequence of the attachments the company refused to transfer the said shares, and the owner was thereby hindered from selling and disposing of the same; that before the proceedings upon said attachments were finally determined, to wit, on February 12, 1883, the said stock had become utterly worthless and was without any value whatever, and the plaintiff thus sustained damage in the sum of over $39,000, for which this suit was brought. The defendant pleaded not guilty.

At the trial on January 7, 1889, the plaintiff put in evidence the records of the attachment proceedings, and evidence of the value of the stock when the attachments were served, and that it was worthless when the proceedings thereon were terminated, and, without showing malice on the part of the plaintiff, or that the averments of his affidavit upon which the writs were issued were wilfully untrue, the plaintiff rested. Thereupon, on motion of the defendant, the court entered judgment of nonsuit, with leave, etc.

Subsequently, upon argument before the court in banc, a rule to show cause why the judgment of nonsuit should not be vacated was discharged, when the plaintiff took this appeal, assigning the order entering said judgment and the order discharging said rule for error.

*Mr. Amos Briggs* (with him *Mr. James H. Heverin*), for the appellant:

The defendant moved for a judgment of nonsuit on the

ground that his liability was exclusively upon the recognizances given in the attachment proceedings, and limited to $500 in each case; and that in any event action in case would not lie, unless it were shown, and that it was not, that the attachments were issued maliciously. It is to be observed that this stock was not held in any other name than that of the real owner thereof. It is further observable that the act does not declare that "the real owner" shall not proceed for the injury done, by her common-law action; but it merely provides an additional security, in case the injured party elect to proceed upon the recognizance. The attaching plaintiff may be a person of no pecuniary liability: in such case, the sureties would be valuable to the injured party.

1. In the absence of express words, in the act, taking away in terms the plaintiff's common-law remedy, such a result cannot be implied. The clear import of the law is to give to the garnishee in the attachment, a remedy which did not before exist, and not to take away a remedy which he already had. To repeal an existing law by implication, there must be such a positive repugnance between the new law and the old, that they cannot stand together or be consistently reconciled: Barber's Case, 86 Pa. 392; Homer v. Commonwealth, 106 Pa. 221. "Where a right is given and a remedy provided by statute, the remedy so provided must be pursued. It is true, that if the right existed at common law, the plaintiff might pursue either remedy, the statutory one being regarded as merely cumulative:" People v. Craycroft, 2 Cal. 243 (56 Am. Dec. 331); Larzelere v. Haubert, 109 Pa. 515. "It has been uniformly decided that the remedy of the attachment debtor, for a wrongful attachment, by an action for malicious prosecution, is not affected by the existence of the bond, but that the remedy still exists:" Drake on Attachments, § 154.

2. Nor is the force of these decisions impaired by our act of March 21, 1806, 4 Sm. L. 332, which provides that "In all cases where a remedy is provided, or a duty enjoined, or anything directed to be done by any act or acts of assembly of this commonwealth, the directions of said acts shall be strictly pursued, and no penalties shall be inflicted, or anything done agreeably to the provisions of the common law in such cases, further than shall be necessary for carrying such act or acts into effect."

It is evident that this act does not destroy the plaintiff's remedy at common law. Observe: "In all cases where a remedy is provided by any act or acts of assembly," etc. Now, what remedy is provided in the act of 1836? We answer, the remedy by attachment. For whom? The attaching creditor; not for the garnishee who is proceeded against, and who does not invoke the aid of the act.

3. It will be claimed that the plaintiff cannot maintain her action unless she show that the attachments were maliciously issued. But she is not to be treated as an attachment debtor, or as one standing in any relation whatever to the attachment plaintiff. The distinction is broad, radical and essential, in right as well as in procedure, between the abuse of legal process against a judgment debtor, or against a party debtor to the plaintiff, as where the laws allow the attachment as original process, and the abuse of such process against a third party who is not liable in any aspect to the plaintiff. In the former relation, the plaintiff has a right, as of course, to a legal process to recover his debt, and in the light of this right the law will not presume that he exercises the right abusively, or in legal parlance, maliciously; and before the debtor can recover for the abuse of process, he must show by affirmative evidence, not by presumption merely, that the process was carelessly and maliciously issued. But when process is issued to seize and actually seizes the property of one standing in no relation of liability to the plaintiff, no case can be shown which exonerates the plaintiff in the process from liability for the damages actually done, whatever the motive of the wrongdoer. This doctrine is aptly illustrated in the case of Rogers v. Dutt, 13 Moore P. C. 209. The actual injury done is the real ground of the action, and the malice to support the action is more of a legal fiction than a legal necessity: Larzelere v. Haubert, 109 Pa. 515.

*Mr. Theodore F. Jenkins*, for the appellee:

1. The only way provided by statute in which a judgment creditor can contest whether stock held in another person's name belongs to the defendant in his judgment, is by pursuing the remedy provided by §§ 32, 33, act of June 16, 1836, P. L. 767, which is exclusive, by virtue of the act of March 21, 1806,

4 Sm. L. 332.  At common law stock could not be taken in execution, and under § 2, act of March 29, 1819, P. L. 217, it could only be done when it was held in the defendant's own name.  Hence, the only way to reach the judgment defendant's interest, in such a case as this, is under the act of 1836 : Early's App., 89 Pa. 411 ; Eby v. Guest, 94 Pa. 160.  The person in whose name the stock is held is simply a "garnishee," and it was not until the act of June 11, 1885, P. L. 107, that the plaintiff, under the act of April 22, 1863, P. L. 527, in any attachment execution or scire facias on foreign attachment, was liable for more than the costs, in the event of the garnishee having nothing in his hands.  The act of June 16, 1836, however, in § 32, provides that before process shall issue the plaintiff shall give bond to indemnify the party to whom the stock shall really belong, in case such stock should not be the property of the defendant, and the only remedy for such damages must be by suit on the bond : Plunkett v. Sauer, 101 Pa. 356, 358.

2.  " When an attachment has been sued out wrongfully, but without malice, the party injured cannot maintain an action on the case to recover damages, unless there is some statutory provision giving him that right:" McKellar v. Couch, 34 Ala. 336 ; Addison on Torts, § 34 ; Drake on Attachments, §§ 114, 726.  Hence, in the absence of proper averment and proof of malicious abuse of civil process, the parties to the proceeding cannot be considered trespassers, while pursuing in good faith the remedy provided by law : Day v. Bach, 46 N. Y. 460 ; Palmer v. Foley, 71 N. Y. 106 ; Sturgis v. Knapp, 33 Vt. 486 ; 1 Saunders 230 b ; 1 Chitty, Pl., 186 ; Barry v. Salt Co., 8 W. N. 307 ; Eberly v. Rupp, 90 Pa. 259, 261.  And in order to sustain an averment of malice, the proof must establish that there was reasonable or probable cause for the employment of the process : Wengert v. Beashore, 1 P. & W. 232 ; Beach v. Wheeler, 30 Pa. 69 ; Eberly v. Rupp, supra ; Bernar v. Dunlap, 94 Pa. 329.

3.  In the present case, the action of the defendant in issuing the attachment was justified by the facts.  The stock was transferred by James Fuller, who was at the time largely indebted, to his wife, Mrs. Belle C. Fuller, as trustee.  This would have been sufficient to require her to show the consideration for the trans-

fer, and the trust upon which the stock was held. When a wife claims to hold property against the creditors of her husband, the burden of proof is on her to show, by clear and satisfactory evidence, that she did not acquire it from him, or by her own labor or earnings : Benson v. Maxwell, 105 Pa. 274, 277 ; Leinbach v. Templin, 105 Pa. 522, 527 ; Orr v. Bornstein, 124 Pa. 311. The action is now brought by the plaintiff to recover in her own right, yet there was no evidence that she was the owner of the stock in her own right. The certificates are in the name of "Mrs. Belle C. Fuller, trustee." She had no authority to sell the stock without notice to the cestui que trust. Moreover, there was no evidence that the plaintiff offered the stock for sale, or that she had any intention of selling it. The stock was not listed. "The great bulk of the stock was held by the original people. It just floated around among a few men."

OPINION Mr. CHIEF JUSTICE PAXSON :

Upon the trial below the court nonsuited the plaintiff, and the refusal of the court to take the nonsuit off is the only matter for our consideration. The facts may be thus briefly stated :

The defendant, Alfred M. Fuller, had a judgment for a large amount against his brother James Fuller. Upon this judgment he proceeded under the act of assembly, as pointed out in Early's App., 89 Pa. 411, to attach 1,300 shares of the stock of the Algonquin Company, standing in the name of Belle C. Fuller, trustee. The said Belle C. Fuller was the wife of the defendant in the attachment execution. The writ was served upon the Algonquin Company as one of the garnishees, but was returned " nihil habet " as to the said Belle C. Fuller. The latter, however, appeared to the suit, and the trial resulted in a verdict and judgment in her favor. She then commenced this suit, a common-law action on the case, against the attaching creditor of her husband, to recover damages for the laying of the attachment. She alleges that the attachment was maliciously issued ; that the attaching creditor knew the stock belonged to her, and not to her husband ; that the effect of said attachment was to prevent the sale and transfer thereof, and that pending said attachment the stock had depreciated greatly in value.

Opinion of the Court.

It may be that for a malicious abuse of legal process a party injured thereby may have redress by a common-law action. There is nothing in this case, however, to indicate a malicious abuse of legal process. It was not denied that this stock had originally been issued to James Fuller, and had been transferred by him to his wife. It is true it stood in her name as trustee. But it does not appear, at least the certificate did not show, for whom she was trustee. The addition of the word "trustee" to her name, under such circumstances, possesses little significance. Having acquired title through her husband, prima facie the stock belonged to him. The burden was upon her to show that it belonged to her. Under such circumstances, it was entirely proper for a judgment creditor of her husband to test her title. This he did by using the process given by act of assembly for that purpose. It is not an uncommon thing for debtors in failing circumstances to seek to shelter themselves behind their wives. It would add greatly to the immunity of such persons, if a legal investigation of the title of the wife could only be undertaken under the penalty of a suit for damages if unsuccessful.

If the plaintiff's stock has depreciated, it is her misfortune. The defendant did nothing to produce such result. It was not taken out of her possession. Nor can it be truly said the attachment prevented its being sold. Upon a proper application to the court below, we have little doubt an order would have been made for its sale, the proceeds to await the result of the attachment. This is constantly done in the case of perishable property. And a motion to dissolve might not have been unsuccessful, if made upon proper proof that the stock was a part of her separate estate and bought with her own money.

Judgment affirmed.