**U. S. INDUSTRIES, INC., a corporation, and Diversacon Industries, Inc., a corporation, Plaintiffs,**

v.

**F. Browne GREGG, Defendant.**

**Civ. A. No. 4431.**

United States District Court, D. Delaware.

Sept. 29, 1978.

---

David A. Drexler of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., William F. Sondericker of Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for plaintiffs.

Thomas S. Lodge of Connolly, Bove & Lodge, Wilmington, Del., E. Earle Zehmer of Bedell, Bedell, Dittmar & Zehmer, Jacksonville, Fla., for defendant.

## OPINION

STAPLETON, District Judge:

Presently before this Court is defendant F. Browne Gregg's "Motion for Order

Granting Restitution and Indemnification by Plaintiffs for Defendant's Property Loss and Expenses of Litigation Incurred by Reason of the Unlawful Seizure of Defendant's Property" ("Motion for Restitution"). In order to understand the grounds for the motion, it is necessary to review the history of the case in some detail.[1]

## I. THE FACTUAL BACKGROUND.

The present action was commenced on June 19, 1972, when plaintiffs, U.S. Industries, Inc., a Delaware corporation, and Diversacon Industries, Inc., a Florida corporation (hereinafter referred to collectively as "USI"),[2] filed a complaint against Gregg in the Delaware Court of Chancery. USI alleged primarily that Gregg, a Florida citizen, had acted fraudulently and in breach of his fiduciary duty in connection with certain agreements between Gregg and USI for the exchange of all of the capital stock of three Florida construction companies controlled by Gregg in return for shares of USI common and special preference stock, and for the employment of Gregg as an executive of the three companies. USI sought a personal judgment of over $20 million from Gregg. On the day the complaint was filed, USI also filed a motion pursuant to 10 Del.C. § 366, seeking sequestration of the USI stock allegedly owned by Gregg, in an attempt to compel his appearance in the Court of Chancery. After an *ex parte* hearing, the Court of Chancery entered an Order of Sequestration appointing a sequestrator and directing him to seize Gregg's interest in 68,210 shares of USI common stock and 8,750 shares of USI special preference stock. The sequestrator accomplished the seizure of stock on June 19, 1972 by issuing notice to USI. Under the terms of the sequestration order, Gregg retained the power to sell the seized stock at any time, provided that the proceeds of the sale would be held by the sequestrator in lieu of the original property or reinvested as directed by Gregg.[3]

The certificates evidencing the sequestered USI stock were in the possession of the First National Bank of Leesburg in Leesburg, Florida (hereinafter "Bank"). Prior to the filing of this action, Gregg had pledged and delivered the stock certificates to the Bank in order to secure the repayment of a loan of $1,635,000 from the Bank to Gregg. However, 8 Del.C. § 169[4] provides that the situs of the stock of a Delaware corporation is Delaware, regardless of the actual physical location of the stock certificates.

---

1. Earlier opinions in this case are reported at 540 F.2d 142 (3d Cir. 1976); 58 F.R.D. 469 (D.Del.1973); and 348 F.Supp. 1004 (D.Del. 1972).

2. Diversacon Industries, Inc., is a wholly-owned subsidiary of U.S. Industries, Inc.

3. Paragraph 4 of the Order of Sequestration provided as follows:
   4. In the event that said defendant shall make a bona fide sale or sales of the property seized hereunder or any thereof and shall receive therefor *not less than the market price* at the time of sale thereof and shall deposit with the Sequestrator the proceeds of such sale or sales, the Sequestrator shall forthwith advise the Corporation of such facts and thereupon the property or part thereof sequestered and seized and so sold shall be released from such sequestration and seizure without further action of any kind by the Sequestrator or this Court, and in such event the proceeds of any such sale shall be held by the Sequestrator until further order of this Court in lieu of the property or part thereof initially seized and so sold; provided further that the proceeds of any such sale or sales shall be subject to investment and reinvestment by the Sequestrator in such property and upon such terms and conditions as said defendant may, from time to time, direct in writing, provided always that the property in which such proceeds are invested (as well as any uninvested proceeds of any sale of such property) shall be held by and in the name of the Sequestrator pursuant to the terms of this Order and until further order of this Court.

4. 8 Del.C. § 169. *Situs of ownership of stock.*
   For all purposes of title, action, attachment, garnishment and jurisdiction of all courts held in this State, but not for the purpose of taxation, the situs of the ownership of the capital stock of all corporations existing under the laws of this State, whether organized under this chapter or otherwise, shall be regarded as in this State.

On July 28, 1972, the Court of Chancery permitted the Bank to intervene in this action. Later that day, Gregg removed the action to this Court. On August 4, 1972, Gregg filed a motion to quash sequestration and to dismiss for lack of jurisdiction and/or to stay the proceedings. Gregg alleged that the Delaware sequestration procedure under which his stock had been seized violated the Equal Protection and Due Process Clauses of the Fourteenth Amendment and that the Court lacked personal jurisdiction over Gregg. On August 11, 1972, in response to the Bank's application, this Court entered an order which amended the sequestration order of June 19, 1972, by allowing the sequestered stock to be transferred on the books of USI from Gregg's name to the name of the Bank or its nominee, as provided for in the prior loan documents between the Bank and Gregg.[5] On October 13, 1972, the Court denied Gregg's motion to quash sequestration and dismiss the action.[6] The Court held that it could exercise *quasi in rem* jurisdiction over the sequestered stock despite the sparsity of other contacts with Delaware, without violating the Due Process Clause. The Court further held that the sequestration procedure itself did not deny procedural due process. The Court denied Gregg's motion for certification of the issues to the Third Circuit pursuant to 28 U.S.C. § 1292(b).

Following its seizure on June 19, 1972, the market value of USI common stock began to decline. On October 13, 1972, the Court amended the sequestration order of June 19, 1972, in order to permit the Bank to transfer or sell, pursuant to the terms of the loan agreements between the Bank and Gregg, any or all of the shares of sequestered stock in satisfaction of Gregg's indebtedness to the Bank. The order required the Bank to file a notice and report on all such sales and to remit any excess net proceeds to the sequestrator. Pursuant to the Court's order, the Bank began to sell the stock to satisfy its lien. Between October 31, 1972, and February 22, 1973, the Bank notified the Court that it had sold 60,663 shares of common stock and 6,750 shares of special preference stock.

On October 26, 1972, Gregg filed a motion seeking leave to make a limited appearance to defend on the merits, with any liability on his part being limited to the value of his interest in the sequestered stock. The Court denied both Gregg's motion[7] and his request for certification of the issues under 28 U.S.C. § 1292(b). On February 15, 1973, Gregg filed a notice of appeal and a petition for a writ of mandamus or prohibition in the Third Circuit Court of Appeals in an attempt to obtain review of this Court's Orders respecting its jurisdiction and the *in personam* character of the appearance required of him if he wished to defend. The Third Circuit dismissed Gregg's appeal on the ground that this Court's order was non-appealable, and denied the petition for a writ of mandamus or prohibition.

On March 6, 1973, the Clerk of the Court entered a default against Gregg, pursuant to Fed.R.Civ.P. 55(a), on the ground that Gregg had failed to appear personally and file an answer within the time provided in the Court's Order of February 12, 1973. On April 4, 1973, an inquest was held at which plaintiff Diversacon Industries, Inc., presented proof to support its claim in Count 8 of the complaint for $400,000 owed by Gregg on a note which he and his wife had signed. On June 8, 1973, the Court ruled that the Bank was entitled to collect attorneys' fees from the proceeds of the sale of the stock, as compensation for fees and expenses which it had incurred in order to protect its interest in the stock in this action. On July 27, 1973, the Bank reported that it had sold 800 additional shares of the common stock. On November 15, 1973, the Court entered an order directing the Bank to sell an additional 6,747 shares of common stock and directing the sequestrator to sell

---

5. Gregg did not oppose that transfer.

6. *U. S. Industries v. Gregg,* 348 F.Supp. 1004 (D.Del.1972).

7. *U. S. Industries v. Gregg,* 58 F.R.D. 469 (D.Del.1973).

the remaining 2,000 shares of special preference stock held by him. On December 5, 1973, the Bank reported that it had sold the 6,747 shares of common stock, and on December 28, 1973, the Bank reported that it had sold 800 shares of special preference stock. Following this sale, the Bank's lien and its expenses of litigation, including attorneys' fees, were fully satisfied, and the Bank forwarded to the sequestrator excess proceeds in the amount of $123.44.

On December 13, 1973, Gregg filed a notice of appeal from the Court's Order of November 15, 1973, ordering the sale of the sequestered stock. On January 16, 1974, the Court stayed the sale of the remaining 1,200 shares of special preference stock then held by the sequestrator. On May 17, 1974, the Third Circuit dismissed Gregg's appeal, without prejudice to his right to appeal after a final judgment had been entered. Following this action, Gregg filed two motions seeking rehearing on this Court's Orders declining to quash sequestration. The Court denied both of these motions.

On May 28, 1975, the Court ordered that the remaining shares of special preference stock be sold. The judicial sale was conducted on June 25, 1975, and an Order confirming the sale for the price of $20,000 was entered on July 7, 1975. On August 20, 1975, the Court entered an Order of Default Judgment requiring disbursement of the proceeds of the sale to the sequestrator and to plaintiff Diversacon Industries, Inc. The Court allowed a sequestrator's fee and disbursements in the amount of $1,192.84, and granted to plaintiff Diversacon Industries, Inc., judgment in the amount of $18,481.20 and costs in the amount of $449.40.[8] On September 10, 1975, Gregg filed a notice of appeal from the Final Judgment of this Court. On July 19, 1976, the Third Circuit Court of Appeals reversed the judgment of

this Court,[9] holding that the Delaware situs statute, 8 Del.C. § 169, as construed by the Delaware courts and as applied in this sequestration proceeding, did not comport with the constitutional requirement that jurisdiction be predicated on minimum contacts with the forum, citing *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Following the reversal by the Third Circuit, USI filed a petition for writ of certiorari in the United States Supreme Court. On June 24, 1977, the Supreme Court held in *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), that Delaware's assertion of jurisdiction based on the sequestration of a defendant's stock having a statutorily conferred situs in Delaware was inconsistent with the constitutional "minimum contacts" requirement expressed in *International Shoe, supra.* In so doing, the Supreme Court overruled its prior decisions in *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1878), and *Harris v. Balk,* 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023 (1905). *Shaffer, supra,* 433 U.S. at 212, n. 39, 97 S.Ct. 2569. Three days later, USI's petition for a writ of certiorari in the present case was denied.[10] On July 6, 1977, the Third Circuit issued a judgment and mandate to this Court "with a direction to dismiss the complaint for want of jurisdiction over the person, in accordance with the opinion of this Court". Following the Third Circuit's mandate, Gregg filed this Motion for Restitution.

In his motion, Gregg claims that he is entitled to recover not only the benefits actually conferred upon USI as a result of the proceedings in this case, but also to receive the value of his interest in the stock seized at the time of the seizure, with interest from that date.[11] He calculates the

8. Therefore, all of the $20,123.44 held by the sequestrator was disbursed to the sequestrator and the plaintiff, Diversacon.

9. *U. S. Industries v. Gregg,* 540 F.2d 142 (3d Cir. 1976), *cert. denied,* 433 U.S. 908, 97 S.Ct. 2972, 53 L.Ed.2d 1091 (1977).

10. *U. S. Industries v. Gregg,* 433 U.S. 908, 97 S.Ct. 2972, 53 L.Ed.2d 1091 (1977).

11. The Third Circuit stated that Gregg had "at least two identifiable interests in the pledged stock: (a) an equitable interest in the amount by which the stock value exceeded the debt, and (b) an absolute right to discharge the bank's lien upon payment of the debt." 540 F.2d at 146. Gregg looks to the first of these interests as the measure of his recovery.

value of that interest to be $751,731.[12] Gregg also asserts that USI must reimburse him for the expenses which he has incurred in having the sequestration order vacated, including costs and attorneys' fees.

In opposing this motion, USI argues that it is responsible to Gregg only for restitution of the benefits which it actually received as a result of the judgment in this case. USI has offered to pay Gregg the sum of $18,481.20 which Diversacon Industries, Inc. received in satisfaction of the default judgment, the sum of $449.40 awarded to Diversacon as costs, and the sum of $1,192.84 covering the sequestrator's fees and disbursements, along with interest from the date of this Court's final judgment, August 29, 1975.[13]

I conclude that Gregg is entitled to restitution of the benefits conferred on USI, together with costs, as USI concedes, but that Gregg's application otherwise fails to state any claim for which relief can be granted.[14]

## II. RESTITUTION.

Gregg urges that he is entitled to the return of the value of his property interest in the sequestered stock at the time of seizure largely on the authority of a line of cases which have permitted "restitution" to parties adversely affected by an erroneous court order.[15] While there is some language in these cases to support Gregg's position, I have found no case in which a plaintiff, following reversal of an erroneous injunction, judgment, attachment, or other decree has received in restitution an amount greater than the value of the benefit which had been conferred upon his opponent as a result of the erroneous order.

■ The best reconciliation of the case law cited is that restitution in these situations is based upon a theory of unjust enrichment. This is the position which the Third Circuit has taken. *In re Imperial "400" National, Inc.,* 456 F.2d 926, 929, n. 3 (3d Cir. 1972). This theory clearly supports Gregg's claim that he is entitled to the return of the amount actually paid to USI from the proceeds of the sale of the sequestered stock, with interest from the date of the order of default judgment.[16] This is the amount by which USI was unjustly enriched as a result of this Court's erroneous entry of a default judgment. However, to

---

12. Gregg calculates the value of the USI stock at the time of sequestration as follows: At the close of trading on the New York Stock Exchange on June 19, 1972, USI common stock was selling for 23⅛. (Wall Street Journal, June 20, 1972, p. 37). Accordingly, the 68,210 shares of common stock had a market value on the date of the seizure of $1,577,356.20. The 8,750 shares of special preference stock, although containing a conversion ratio to USI common stock of 3⅛ shares of common for each share of special preference, had a value in excess of this conversion ratio. (See Affidavit of Sanford Kaynor, dated July 27, 1972. The sales of the special preference stock by the First National Bank of Leesburg reveal that the special preference stock sold at all private sales reported to this Court for a price equal to at least four or more times the current market price of the common stock). Using a minimum conversion factor of four times the common stock price of 23⅛ on June 19, 1972, the special preference stock had a value of $809,375 on that date. The combined value of the common and special preference stock on June 19, 1972 was $2,386,731.

From this total value, Gregg has subtracted $1,635,000, the amount of the Bank's lien on the stock, leaving his interest at $751,731.

13. In addition, plaintiffs agree that they must pay Gregg the $618 in costs which he incurred in connection with his appeal to the Third Circuit.

14. I assume, without deciding, that if defendant were entitled to more than restitution of the benefits conferred upon USI, he could secure that relief in this action without having to file an independent suit.

15. *See, Northwestern Fuel Co. v. Brock,* 139 U.S. 216, 11 S.Ct. 523, 35 L.Ed. 151 (1891); *Arkadelphia Milling Co. v. St. Louis Southwestern Ry. Co.,* 249 U.S. 134, 39 S.Ct. 237, 63 L.Ed. 517 (1919); *Ex Parte Lincoln Gas & Electric Light Co.,* 256 U.S. 512, 41 S.Ct. 558, 65 L.Ed. 1066 (1921); *Baltimore & Ohio R. R. Co. v. United States,* 279 U.S. 781, 49 S.Ct. 492, 73 L.Ed. 954 (1929); *In re Imperial "400" National, Inc.,* 456 F.2d 926, 929 (3d Cir. 1972); *Middlewest Motor Freight Bureau v. United States,* 433 F.2d 212, 225–29, 242–44 (8th Cir. 1970).

16. USI does not dispute this.

the extent that Gregg demands restitution of what he lost in the decline of the market value of his stock as a result of the erroneous orders of this Court, without regard to the benefit which USI received, the cases do not support his position.[17]

Most courts have treated claims for recovery beyond the value of the benefit conferred by an erroneous order as damages claims, and have held them to be subject to a different set of legal principles than those applicable to claims for restitution.[18] There is, of course, good reason to distinguish between such damage claims and restitution claims based upon unjust enrichment. An unjust enrichment claim presents only the issue of whether a party should be able to retain a windfall. A claim for damages, on the other hand, may present the much more difficult issue of how a loss should be apportioned between parties, neither of whom has benefitted from, or been "at fault" with respect to the transaction giving rise to the loss.

Before a court will award damages which have resulted from a reversed judgment, there is usually a requirement that there be proof of malice or lack of probable cause in instituting the action on the part of the plaintiff.[19] Where there is a court-ordered seizure of property, some states require proof of malice or lack of probable cause before there may be a recovery of damages. *Weber v. Vernon,* 2 Pennewill 359, 45 A. 537

(Del.Super.1899), suggests that in a wrongful attachment case, a showing of malice or lack of probable cause may be required under Delaware law.

■ It is unnecessary to pursue this general line of authority, however, for the rule appears to be nearly universal that where a plaintiff, even in a property seizure case, relies upon a statutory procedure which has not theretofore been declared unconstitutional and where the only claim of "wrongfulness" of the plaintiff's attachment or other conduct in bringing the action is the unconstitutionality of that procedure, there can be no recovery of damages.

At the time when USI invoked the Delaware sequestration procedure as a method of obtaining jurisdiction over Gregg and at the time of the eventual recovery, no court had held that procedure to be unconstitutional. Even following USI's invocation of the procedure, both this Court and the Delaware courts held that the procedure met constitutional standards.[20] *See, U. S. Industries v. Gregg,* 348 F.Supp. 1004 (D.Del. 1972); *Greyhound Corp. v. Heitner,* 361 A.2d 225 (Del.1976); *Wiley v. Copeland,* 349 A.2d 211 (Del.1975); *Gordon v. Michel,* 297 A.2d 420 (Del.Ch.1972). In July of 1976, over four years after USI had instituted this action and moved for an order of sequestration, the Third Circuit concluded that the use of that procedure in order to

---

**17.** Gregg also cites Federal Rules of Civil Procedure 81(b) and 83 as possible sources of authority for this Court to grant the relief he seeks. Rule 81(b) abolishes the writs of scire facias and mandamus, but permits equivalent relief to be obtained by appropriate action or motion. Rule 83 provides in part: "In all cases not provided for by rule, the district courts may regulate their practice in any manner not inconsistent with these rules." However, these rules may not be construed so as to extend the jurisdiction of this Court. *See* Federal Rule of Civil Procedure 82. Furthermore, they may be applied only in accordance with principles of substantive law.

**18.** *See, e.g., Tenth Ward Road Dist. No. 11 v. Texas & P. Ry. Co.,* 12 F.2d 245 (5th Cir. 1926); *Monolith Portland Midwest Co. v. Reconstruction Finance Corp.,* 128 F. Supp. 824, 878 (S.D. Cal.1955), *vacated on other grounds,* 240 F.2d 444 (9th Cir. 1957); *Greenwood County v. Duke Power Co.,* 107 F.2d 484 (4th Cir. 1939);

*cert. denied,* 309 U.S. 667, 60 S.Ct. 608, 84 L.Ed. 1014 (1940); *United Motors Service v. Tropic-Aire,* 57 F.2d 479 (8th Cir. 1932); *Kansas City Southern Ry. Co. v. Southern Trust Co.,* 279 F. 801 (8th Cir. 1922); *Hartford-Empire Co. v. Shawkee Mfg. Co.,* 163 F.2d 474 (3rd Cir. 1947); *Chain O'Mines, Inc. v. United Gilpin Corp.,* 131 F.2d 824 (7th Cir. 1942).

**19.** *See Tenth Ward Road Dist. No. 11 v. Texas & P. Ry. Co., supra; Monolith Portland Midwest Co. v. Reconstruction Finance Corp., supra; Greenwood County v. Duke Power Co., supra.*

**20.** There are many cases holding that a party should not be held liable for errors of the court. *See, e. g., Greenwood County v. Duke Power Co., supra; United Motors Service v. Tropic-Aire, supra; Kansas City Southern Ry. v. Southern Trust Co., supra.*

obtain jurisdiction was unconstitutional. *U. S. Industries v. Gregg,* 540 F.2d 142 (3d Cir. 1976).

The Delaware rule is that a plaintiff will not be held civilly liable for reliance upon a statutory procedure in a property seizure case, where that statute has not yet been declared unconstitutional. In *Downs v. Jacobs,* 272 A.2d 706 (Del.Sup.Ct.1970), an action for damages for distraint of rent under an allegedly unconstitutional law, the court stated, at 708:

> . . . we hold that the tenant may not recover damages from the landlord or the constable for a good faith reliance upon the Landlord Distress Law, even though the Law may be subsequently declared unconstitutional and invalid.

The federal rule in this Circuit is the same as that in Delaware. The Third Circuit has held that litigants are justified in their reliance upon state attachment procedures until such procedures are specifically overturned, even when a Supreme Court decision has rendered their constitutionality questionable. *G. H. McShane Co., Inc. v. McFadden,* 554 F.2d 111 (3d Cir.), *cert. denied,* 434 U.S. 857, 98 S.Ct. 178, 54 L.Ed.2d 129 (1977); *Kacher v. Pittsburgh National Bank,* 545 F.2d 842 (3d Cir. 1976).[21]

In *McShane,* the plaintiff had invoked Pennsylvania's foreign attachment procedures. Subsequently, the Third Circuit invalidated those procedures in *Jonnet v. Dollar Savings Bank of City of New York,* 530 F.2d 1123 (3d Cir. 1976). Several days later, the *McShane* trial court enjoined any further attachment. The owner of the property which had been seized then attempted to revive his counterclaim for damages resulting from the attachment. The Third Circuit held that even if the ruling in *Jonnet* had been foreshadowed by *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), decided two years before McShane filed his action, McShane could not be held liable for damages. Under *Kacher,* any other result would work an injustice on those plaintiffs "who acted in

accordance with a time honored and court tested proceeding." 545 F.2d at 846. The court in *McShane* concluded that the *Jonnet* holding could not be applied retroactively in order to secure damages from a plaintiff who had acted under a "presumptively constitutional scheme." In *Kacher,* the Third Circuit reached a similar result in an action for damages resulting from the invocation of a Pennsylvania replevin statute subsequently held to be unconstitutional.

Gregg argues that none of the cases cited are applicable to this set of facts. He attempts to distinguish *McShane* on the ground that the defendant there was requesting retroactive application of a constitutional decision. He claims that since he brought the first successful challenge to the Delaware sequestration procedure, he is entitled to "the fruits of his successful challenge." However, this purported distinction does not render the rule of *Kacher* and *McShane* inapplicable. In this case, as in those two cases, the plaintiff had invoked the procedure prior to the time when it was held to be unconstitutional. As the *McShane* court said, there is no . . .

> . . . right to recover damages from an individual who followed a statutory scheme that had not yet been held unconstitutional when so utilized.

554 F.2d at 114. The holdings of *Kacher* and *McShane* are sufficiently broad to cover the present situation.

Application of the Delaware and Third Circuit rule is particularly fitting with this set of facts. As noted above, USI was relying upon a procedure for the sequestration of stock of a Delaware corporation which had been created by the General Assembly and which had been repeatedly upheld as constitutional by the courts. In addition, the form of the sequestration order submitted by USI to the Chancery Court attempted to provide Gregg with adequate protection against depreciation of the value of the seized stock by allowing Gregg to sell the seized stock and deposit

---

21. The Second and Tenth Circuits have reached the same conclusion. *Tucker v. Maher,* 497 F.2d 1309 (2d Cir. 1974); *Rios v. Cessna Finance Corporation,* 488 F.2d 25 (10th Cir. 1973).

the proceeds of the sale with the sequestrator.[22] This Court upheld the validity of the procedure followed by USI, and at the time when all of the seized stock had been sold, that procedure had not yet been judicially determined to be unconstitutional by any court. Finally, as noted above, when the sequestration procedure, as applied in this case, was ultimately invalidated by the Supreme Court, the Court acted upon a theory which required the overruling of two landmark United States Supreme Court cases. *See, Shaffer v. Heitner,* 433 U.S. 186, 212, n. 39, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).

Thus, it is difficult to find fault with USI's conduct. To be sure, it is also difficult to find fault with Gregg's conduct. However, if there was any way in which the loss could have been avoided, it would have been through action by Gregg. Gregg contends that as a practical matter he could not have sold the sequestered stock, even though authorized to do so by the sequestration order. He claims that, had he directed the sale of the stock, a substantial federal income tax liability would have been incurred and that, without access to the proceeds of the sale, he would not have been able to meet that obligation. The affidavit filed in support of this motion, however, is the first indication to the Court, or so far as the record shows, to USI that such a problem existed. If the problem had been brought to the attention of the Court, it is inconceivable to me that some relief would not have been granted either by way of a modified sequestration order or an increased bond.[23] Indeed, even if out of an abundance of caution, Gregg had decided not to approach the Court for fear of entering a general appearance,[24] he should, in fairness, have informed USI of his inability to pay the taxes other than from the proceeds of the sale and of his intention to look to USI for any subsequent decline in the value of the stock. If USI had been so notified, it could have reevaluated its position and made an informed decision as to whether it wished to assume that risk or to offer to authorize the sequestrator, in the event of a sale, to release sufficient funds to pay the taxes. But a rule which would permit recovery of market loss, in the absence of such a notice, would give the benefit of any market gains to the owner of sequestered property while requiring the plaintiff to insure him against any market loss. Equity does not favor the creation of such a rule.

Gregg also argues that he is entitled to damages for the loss in value of the sequestered stock because the sequestration procedure violated procedural due process, citing *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), and *Jonnet v. Dollar Savings Bank of the City of New York,* 530 F.2d 1123 (3d Cir. 1976). Neither of those cases is on point because the practical effect of the sequestration order signed in this case was not to deprive Gregg of the possession or control of his stock, but only to impose a lien upon it, which would not impair the sale but would pass to the proceeds of such a sale. *See, Sager v. Burgess,* 350 F.Supp. 1310 (E.D.Pa. 1972), *summarily affirmed,* 411 U.S. 941, 93 S.Ct. 1923, 36 L.Ed.2d 406 (1973); *Winpenny v. Krotow,* 574 F.2d 176 (3d Cir. 1978). But it is unnecessary to rule on this constitutional issue. Even if the sequestration

---

**22.** Gregg's control over the sale of the stock is a key factor which differentiates the present case from *Cantor v. Sachs,* 18 Del.Ch. 359, 162 A. 73 (1932) upon which Gregg relies so heavily. *See, TWA, Inc. v. Hughes Tool Co.,* 41 Del.Ch. 11, 187 A.2d 350 (Del.Ch.1962), *affirmed sub. nom. Breech v. Hughes Tool Co.,* 41 Del.Ch. 128, 189 A.2d 428 (Del.Sup.1963).

**23.** In *Sargent v. Fuller,* 132 Pa. 127, 19 A. 34 (1890), the Pennsylvania Supreme Court said: If the plaintiff's stock has depreciated, it is her misfortune. The defendant did nothing to produce such result. It was not taken out of her possession. Nor can it be truly said the attachment prevented its being sold. Upon a proper application to the court below we have little doubt an order would have been made for its sale, the proceeds to await the result of the attachment.
19 A. at 35.

**24.** Gregg's counsel made numerous communications and arguments to the Court during the course of this case, none of which were held to constitute personal appearances. Had the Court been notified of Gregg's situation, it could have considered the matter on its own motion.

procedure utilized did violate procedural due process, as Gregg maintains, that does not strengthen his case. When invoked, that procedure had never been declared unconstitutional on those grounds, and *McShane* and *Kacher, supra,* accordingly, remain a bar to recovery.

Gregg's motion for restitution, except to the extent earlier noted, will be denied.

### III. ATTORNEYS' FEES.

■ Gregg also claims that he is entitled to recover the attorneys' fees which he has incurred in defending this action. In the federal courts, the general rule is that the prevailing party is not entitled to recover attorneys' fees. *See, Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). However, a federal court sitting in diversity, as this one is, should follow state law regarding the grant of attorneys' fees. *Alyeska, supra,* 421 U.S. at 259, n. 31, 95 S.Ct. 1612.

■ Under Delaware law, the general rule is also that a prevailing party may not recover attorneys' fees as part of costs. *See, e. g., Walsh v. Hotel Corp. of America,* 231 A.2d 458 (Del.1967); *Mencher v. Sachs,* 39 Del.Ch. 366, 164 A.2d 320 (Del.1960); *Maurer v. International Re-Insurance Corp.,* 33 Del.Ch. 456, 95 A.2d 827 (Del.1953); *Wilmington Trust Co. v. Coulter,* 208 A.2d 677 (Del.Ch.1965).

■ The Delaware case law upon which Gregg relies in contending that this situation is an exception to the general rule suggests that attorneys' fees expended for a "victorious attack" upon an attachment may be recoverable from the attacking party as "costs" covered by the bond prescribed by the attachment statute [25] or perhaps as "court costs." *E. g., Walsh v. Hotel Corporation of America, supra; Moffat Tunnell Improvement Dist. v. United States Fidelity & Guaranty Co.,* 7 W.W.Harr. 473, 37 Del. 473, 185 A. 186 (Del.Super.Ct.1936); *Town of Seaford v. Eastern Shore Public Serv. Co.,* 2 Terry 438, 41 Del. 438, 24 A.2d 436 (Del.Super.Ct.1942). The suggestions in

the Delaware case law, however, were made in the context of situations in which the plaintiff had been found to have violated or misapplied the authorizing statute and a seizure had been dissolved for what are termed "defects in the process." I believe that the Supreme Court of Delaware, if faced with the situation before me, would find *Downs v. Jacobs, supra,* rather than the defective process cases, to be the controlling precedent. The policy there stated in the context of another statute authorizing prejudgment seizure, would appear to be the overriding concern under Delaware law:

> . . . Citizens . . . have a right to accept the law as it is written until it is repealed or judicially condemned. They are not required to speculate upon the validity of a statute or to act under it at their peril. Until legislatively or judicially excised, a statute is an operative fact. Courts presume every legislative act constitutional and indulge every intendment in favor of validity. No penalty may be visited upon citizens for doing likewise. . . .

272 A.2d at 707.

Gregg's motion for attorneys' fees will be denied.

### IV. CONCLUSION.

In accordance with the mandate of the Third Circuit, the complaint in this case must be dismissed for want of jurisdiction. In addition, the default judgment will be vacated. Gregg will receive restitution from Diversacon in the amount of $18,930.60, with interest from the date of the judgment. As the prevailing party, Gregg will be awarded costs, including the amount of the sequestrator's fees. All further claims for restitution and attorneys' fees will be denied.

Submit order.

---

**25.** Plaintiff's bond in this case contains only the condition that "plaintiffs shall abide with any order of this Court respecting the property herein ordered to be seized and sequestered." Gregg does not contend that USI violated that condition.