**UNITED STATES of America, Plaintiff,**

v.

**M. Jeanne STONE, et al., Defendants.**

**Civ. A. No. 4411.**

United States District Court,
D. Delaware.

Feb. 5, 1982.

Howard M. Handelman and Jeffrey M. Weiner, Bayard, Brill & Handelman, Wilmington, Del., for M. Jeanne Stone.

Charles S. McDowell and David J. Baldwin, Potter, Anderson & Corroon, Wilmington, Del., for AVCO Corp., Chrysler Corp. and Consolidated Natural Gas Co.

MURRAY M. SCHWARTZ, District Judge.

This is a cross-claim in an action brought by the United States of America against M. Jeanne Stone ("Stone") to recover unpaid federal taxes. Cross-claimant Stone asserts that cross-defendants AVCO Corporation ("AVCO"), Chrysler Corporation ("Chrysler") and Consolidated Natural Gas Company ("Consolidated") breached the duty each had to invest dividends or interest withheld from her after a Sequestration Order was issued. The cross-claimant seeks judgment against the cross-defendants in an amount equal to her loss of investment return on the money withheld by each of these corporations after the Sequestration Order was entered or in the amount by which each of them was unjustly enriched. Presently before the Court is the cross-defendants' motion for summary judgment on the issue of liability.

The United States commenced this action against the cross-claimant on July 5, 1972. That same day a Sequestration Order was entered appointing a Sequestrator to seize and hold stock and debentures owned by her in the cross-defendants, all Delaware corporations.[1] On July 6, 1972, a copy of

---

1. On July 6, 1972 $90,000 (principal amount) of AVCO's 5½% convertible subordinated deben-    tures was registered in the name of M. Jeanne

the Sequestration Order was served upon the registered agent of each of the cross-defendants. After receiving a copy of the Order, AVCO and Consolidated each caused stop orders to be placed on the transfer of the debentures and on the payment of interest on them, while Chrysler caused entries to be made in the appropriate records of the corporation, its registrars and its transfer agents noting that the common stock in question was subject to the Order.[2]

The mechanics for payment of interest and dividends respectively by cross-defendants were in place prior to issuance of the sequestration order: AVCO had deposited funds with Bankers Trust Company as trustee, pursuant to the terms of an indenture; Consolidated had deposited sums with Morgan Guaranty Trust Company, pursuant to the terms of an indenture; and Chrysler provided for the payment of dividends on Chrysler stock by depositing funds in a non-interest bearing checking account. These practices continued after the Sequestration Order was entered. AVCO and Consolidated received no benefit from the funds deposited for—but withheld from—M. Jeanne Stone after the entry of the Order.[3] The withheld dividends which had been deposited to meet Chrysler's obligation to Stone, however, were part of its compensating bal-

ance with the bank, and this may have resulted in some benefit to Chrysler.

After the Sequestration Order was entered, communication between the parties concerned was infrequent or absent for a period of over six years. Until December, 1978, silence between the cross-defendants and Stone prevailed; similarly, there was scant correspondence between them and the sequestrator.[4] During this period, neither Stone, her counsel nor the sequestrator provided any instructions to the cross-defendants regarding the payments withheld from her after issuance of the Order. The cross-defendants were not directed either to pay the withheld sums to the sequestrator or to invest it. At the same time, none of the cross-defendants inquired of the wishes of either the sequestrator or Stone with respect to those amounts.

This period of mutual inattention was ended in December, 1978 by letters to each of the cross-defendants in which Stone's attorneys requested an accounting of any interest or dividends which had accrued on the debentures and common stock held by her in the cross-defendant corporations.[5] In those letters counsel for Stone noted their assumption that the interest and dividends in question had been withheld by the

Stone, and also registered was $270,000 (principal amount) of AVCO's convertible subordinated debentures registered in the joint names of Andrew O. Stone and M. Jeanne Stone. On that same date, there was registered in the name of Stone $65,000 (principal amount) of Consolidated Natural Gas's 9% debentures due July 1, 1995, as well as 2000 shares of common stock of Chrysler Corporation.

2. AVCO informed the sequestrator by letters dated July 25, 1972 (this letter concerned the debentures registered solely in the name of M. Jeanne Stone) and August 7, 1973 (this letter concerned the jointly held debentures of M. Jeanne Stone and Andrew O. Stone) that these actions had been taken. Consolidated so advised the sequestrator by a certificate dated August 7, 1972. A certificate sent by Chrysler informing the sequestrator of its action was dated July 21, 1972.

3. Provisions in both indentures provided that no interest would be paid by the trustees to the cross-defendant corporations on any sums deposited under the terms of the indenture, unless the parties to the indenture agreed other-

wise (AVCO-Bankers Trust indenture section 9.05; Consolidated-Morgan Guaranty indenture section 11.03). Neither corporation reached any other agreement with the trustees regarding the payment of interest to them, and therefore, no interest was paid. Moreover, the compensation paid by AVCO and Consolidated to the trustees was not reduced as a result of the funds deposited nor did those funds serve as any kind of compensating balance.

4. In addition to the letters or certificates sent by cross-defendants to the sequestrator informing him of the nature and amount of Stone's holdings, see note 2 supra, AVCO inquired by letters dated May 8, 1973 and March 9, 1978 as to whether the Sequestration Order was still in effect. In each instance, the sequestrator advised that the Order continued in effect.

5. Claimant made this request through counsel by letters dated December 7, 1978 (to AVCO) and December 12, 1978 (to Consolidated and to Chrysler).

corporations pursuant to the Sequestration Order. The letters included no instructions regarding the investment of the accrued interest. The cross-defendants each responded to these letters by providing an accounting in a letter to the cross-claimant's counsel.[6]

Until December, 1978, none of the cross-defendants had invested the interest or dividends being withheld. On or about December 13, 1978, however, AVCO "voluntarily caused" Bankers Trust Company to invest $119,723.26 of the interest on its debentures being withheld.[7]

By letters in substantially similar language dated May 17, 1979, each of the cross-defendants was apprised by the sequestrator that Stone demanded immediate payment of the accrued interest or dividends to the sequestrator; in addition, Stone demanded at least a 5% investment return on the withheld funds.[8] After a direct demand from the sequestrator, each cross-defendant paid the withheld interest or dividends to him.[9] Since these payments

were made, AVCO and Consolidated have caused all interest payments on the sequestered debentures to be paid according to the instructions of the sequestrator, either to Stone or to the sequestrator. No dividends have been declared on Chrysler stock since Chrysler paid its withheld dividends to the sequestrator.

The existence of a duty to invest on the part of the cross-defendants is a matter of dispute between the parties. As the cross-claimant would have it, the language of the Sequestration Order imposed the duty to invest the sums withheld upon each cross-defendant. The cross-defendants also rely upon the terms of the Order for support of their position that they were under no such duty.

Although the Order makes a number of specific demands upon the corporations in which Stone held debentures or stock, it makes no express reference to a duty on their part to invest withheld interest or dividends. The cross-claimant, however, points to the requirement found in para-

6. By letter dated December 11, 1978, AVCO advised Stone's counsel that $121,175 in interest on the debentures was being withheld. Consolidated, by letter dated December 28, 1978, informed her counsel that $35,100 in interest on the debentures was being withheld. Her counsel was informed by Chrysler, through a letter dated February 2, 1979 that $10,500 in dividends on her Chrysler common stock through the last quarter of 1978 was being withheld.

7. This sum was invested in United States Treasury Bills in the principal amount of $125,000, which were due on May 29, 1979, for the account of Stone. Counsel for cross-claimant was notified of this action by letter from AVCO dated May 17, 1979.

8. The letter read as follows:
Mrs. Stone's counsel have made two specific demands of me which I forward to you:
(1) That AVCO corporation (Chrysler, Consolidated) pay immediately to me the accrued interest (dividends) on these debentures which has been withheld since July 5, 1972, and
(2) That AVCO Corporation (Chrysler, Consolidated) also pay to me any investment return actually earned on the withheld interest (dividends), but in any event not less than 5% compound interest on the withheld sums which represents the interest which these

funds would have earned in my sequestration account.
In response AVCO and Chrysler advised the sequestrator that the withheld interest or dividends would be sent to the sequestrator upon his direct demand; Morgan Guaranty Trust Company, on behalf of Consolidated, informed the sequestrator that the withheld interest would be paid when it was instructed to do so by Consolidated.

9. The sequestrator forwarded a demand to these corporations for the sums withheld by letters dated July 26, 1979. On or about August 6, 1979, AVCO caused Bankers Trust Company to pay to the sequestrator $136,-451.74 which consisted of $131,175 interest on the debentures through May 31, 1979, as well as $5,276.74 investment earnings since December 13, 1978. On or about September 24, 1979, Chrysler caused the $10,900 in withheld dividends to be paid to the sequestrator.

Following the sequestrator's demand, Consolidated declined to make the payment until it was assured that the Sequestration Order and the sequestrator's appointment were still in effect. This assurance was given in the form of the Court's Order of April 28, 1980, received by it under the sequestrator's letter dated May 7, 1980. On or about May 28, 1980, Consolidated caused $43,875 in interest withheld to be paid to the sequestrator.

graph 5(f) of the Order that the cross-defendants,

> in general, and subject to the provisions of paragraph 4 hereof, *do all acts necessary to hold and preserve* all shares of stock, debentures, options, warrants, contractual obligations, rights, debts or credits pertaining to said sequestered shares of stock and debentures until further order of this Court. (Emphasis added).

The language underscored, the cross-claimant argues, imposed an investment duty upon each of the cross-defendants. Her position is that if the object of the Order was simply to require the cross-defendants to retain possession of the sequestered property the use of the word "hold" alone would have been sufficient. With the addition of the word "preserve," Stone contends, the Court intended that the Order was to impose an investment duty. The dictionary is opened in support of this contention: the word "preserve" is defined as "to keep safe from injury, harm or destruction; to keep alive, intact, in existence or from decay; to keep or save from decomposition." *Webster's Third New International Dictionary* 1794 (1961). Citation is also made to two cases in which similar language is construed. *See Reed v. Central National Bank of Alva*, 421 F.2d 113 (10th Cir. 1970);

*Bookout v. Atlas Financial Corp.*, 395 F.Supp. 1338 (N.D.Ga.1974).

Building on this semantic foundation, the cross-claimant suggests that in times of inflation investment is necessary to "preserve" the value of property, and, therefore, the word "preserve" imposed an investment duty on the cross-defendants. The argument is more ingenious than sound.

The definition of "preserve" does not support the cross-claimant's argument. The denotation of the word is to "protect" or "maintain"; it contains no suggestion of growth or improvement which might imply a duty to invest. An imposition of a duty to invest funds must necessarily envisage an increase in the amount of those funds. Use of the word "preserve"—which means to "maintain" or "protect"—would be a curious way of imposing a duty to increase the withheld funds. The word "preserve" simply suggests that which the cross-defendants did, namely to maintain and protect the fund.

The cross-claimant's suggestion that in face of the contemporary inflation rate the use of the word "preserve" imposed a duty to invest requires that the word be considered in light of the entire Order. The Order is a detailed document which imposes numerous duties and obligations on the cross-defendants.[10] Yet, as noted, the Or-

---

**10.** Under paragraph 5 of the Sequestration Order the cross-defendants were to:

(a) Deliver to the Sequestrator within ten (10) days after such service, a statement of the number of shares of stock, options and warrants or debentures held or owned, or standing in the name of, M. Jeanne Stone, or in or to which M. Jeanne Stone may have any right, title or interest, legal or equitable, with the number or numbers of the certificate or certificates, or other markings, distinguishing the same, and the dates each of said certificates was issued; (b) Deliver to the Sequestrator within ten (10) days after such service, a statement of the number of options and of warrants to purchase shares of stock which may be owned by M. Jeanne Stone and the make or symbol used to identify any written evidence of such options and warrants; (c) Cause entries to be made upon their respective corporate books showing that all such shares of stock and debentures, and all right and interest thereto and therein, are held by the Sequestrator; (d) Cause entries to be made upon the proper records of the respec-

tive corporations showing that all such options and/or warrants to purchase shares of stock in the respective corporations are held by the Sequestrator; (e) Refuse, until further order of this Court, to pay any or all of the contractual obligations, rights, debts or credits due, under any type of agreement, contract or other legal instrument of any kind whatever pertaining to the sequestered shares of stock and debentures to M. Jeanne Stone or to any representative of the said M. Jeanne Stone, including dividends, except as hereinbefore provided in paragraph 4, nor shall M. Jeanne Stone, or any representatives of the said M. Jeanne Stone receive any such payment, except in conformity with the further order of this Court; and (f) in general, and subject to the provisions of paragraph 4 hereof, do all acts necessary to hold and preserve all shares of stock, debentures, options, warrants, contractual obligations, *rights, debts or credits pertaining to the said* sequestered shares of stock and debentures until further order of this Court.

der makes no express mention of a duty to invest on the part of the cross-defendants. The only express references to investment in the Order indicated that the sequestrator was to invest funds, in two instances. One, the sequestrator was to invest the proceeds of the sale of any of the sequestered property; two, the sequestrator was to invest the proceeds of payments any of the cross-defendants desired to make. This investment, however, was to be made only after written instruction was received from cross-claimant Stone, and upon application to the Court. Thus, although an investment of funds on the part of the sequestrator could be made in two specific circumstances, he could do so only upon the explicit direction of Stone.[11] The specificity with which this investment arrangement is delineated reveals the cross-claimant's argument—that the word "preserve" actually means "cross-defendants had a duty to invest funds withheld in times of inflation"—as specious. Similarly, given the numerous and detailed obligations required of the cross-defendants by the Order, the word "preserve" cannot bear the weight the cross-claimant asks it to carry. It would be incongruous for an Order imposing numerous precise requirements upon the cross-defendants to impose a duty to invest on them merely by use of the word "preserve."

A review of the cases cited by the cross-claimant does not change this conclusion. In *Reed v. Central National Bank of Alva,* *supra,* the issue was whether a bank holding convertible debentures as collateral security for a loan was liable for failure to convert them into common stock to avoid an impairment in their value. The failure of the bank to convert them when requested to do so by their debtor resulted in a decrease of 50% in the value of the collateral. Therefore, the court's reading of "preservation" as including preservation of value simply recognizes a duty to "protect" or "maintain" the value of collateral from diminishment. It offers no support for an implied duty to invest on the part of the cross-defendants which would have augmented— not merely maintained—the funds withheld from Stone. At all events, even if the provision in the Sequestration Order is read as "preservation of value," the cross-claimant asks too much of the term to have it impose the duty on the cross-defendants not simply to invest the funds, but to invest them cannily enough to "preserve" them from inflation. *Bookout v. Atlas Financial Corp., supra,* supports the proposition that the word "preserve" standing alone will not impose an investment duty under the Sequestration Order because in that case the court first ordered the receiver to hold and preserve the collateral, and thereafter, *expressly* ordered him to invest the proceeds collected upon that collateral. As previously rehearsed, no such express provision was included in the Sequestration Order issued in the present case.

■ In addition, the fact that AVCO "voluntarily caused" the investment of $119,723.26 of the interest being withheld does not alter the conclusion that the Sequestration Order did not impose a duty to invest on the cross-defendants. At most this action could establish that the cross-defendants were *permitted* to invest the funds withheld, and not that they were *obligated* to do so.

Finally, because the terms of the Sequestration Order simply did not impose an investment duty on the cross-defendants, cross-claimant's argument by analogy that the investment of the withheld funds was as vital to their preservation as pre-judgment interest is to fully compensate an injured party for his loss is inappropriate. Pre-judgment interest is awarded to fully compensate a party for a wrong suffered by him. *See Rollins Environmental Services, Inc. v. WSMW Industries, Inc.,* 426 A.2d 1363, 1364–65 (Del.Super.1980); *Superior Tube Co. v. Delaware Aircraft Industries, Inc.,* 60 F.Supp. 573, 574 (D.Del.1945). It is true that in some sense the investment of the sums withheld might have made cross-claimant "whole"—which is the intent of pre-judgment interest—but in the present

11. Sequestration Order ¶ 4.

case under the terms of the Order there was no "wrong" suffered by her. Beyond the terms of the Sequestration Order, cross-claimant does not suggest any other rationale upon which the liability of cross-defendants could be grounded, nor has a search by the Court revealed one.

In addition to her claim premised upon the Sequestration Order, cross-claimant contends that Chrysler is liable to her on an unjust enrichment theory.[12] During the period in question Chrysler deposited dividend checks payable to Stone in a non-interest bearing checking account. Cross-claimant's unjust enrichment theory against Chrysler is based on the fact that the funds deposited were part of Chrysler's compensating balance with its bank. The parties have stipulated that this may have resulted in some benefit to Chrysler.

■ The purpose of restitution is to require a person who has been unjustly enriched at another's expense to compensate the other party for the amount of the enrichment. *Chrysler Corp. v. Airtemp Corp.*, 426 A.2d 845, 855 (Del.Super.1980). The unjust enrichment theory embodies equitable considerations, *see Nepa v. Marta*, 415 A.2d 470, 472 (Del.Supr.1980); *Bellanca Corporation v. Bellanca*, 169 A.2d 620, 623 (Del.Supr.1961) (quasi-contractual relationships are based upon unjust enrichment and are imposed in order to work justice), and to require restitution a court must determine that the retention of the benefits would be unjust. *Chrysler v. Airtemp Corp., supra*, at 855. Put another way, recovery may be had on an unjust enrichment theory where the circumstances of the case are such that equity and good conscience demand restitution. *See* Restatement Restitution § 1; R. Goff & G. Jones, The Law of Restitution 13–14 (2d ed. 1978).

Because all inferences drawn from the evidentiary sources presented to the Court must be made in favor of Stone, who is opposing the motion for summary judgment, *Small v. Seldows*, 617 F.2d 992, 994 (3d Cir. 1980), it is assumed that Chrysler did benefit from the deposit of the withheld dividends in its checking account. This fact notwithstanding, the circumstances of this case are not such that equity and good conscience demand restitution by Chrysler; that is, the retention of the benefit received by it would not be unjust.

It may be that "unjust enrichment is an indefinable idea," 1 G. Palmer, The Law of Restitution 5 (1978), not always easy to apply. However, a comparison of the equities in the instant case with those with which the court was presented in *U. S. Industries, Inc. v. Gregg*, 457 F.Supp. 1293 (D.Del.1978), aff'd, 605 F.2d 1199 (3d Cir. 1979), makes it clear that there can be no recovery on an unjust enrichment theory by cross-claimant Stone.

■ In *Gregg*, restitution was sought from the plaintiff which had originally commenced an action and caused the sequestration of Gregg's stock after which the Third Circuit Court of Appeals held that the Delaware sequestration statute was unconstitutional. In the present case of course Chrysler is a cross-defendant, and it neither instituted the action against Stone nor did it cause the sequestration. Payment was made to the plaintiff in *Gregg* of sums obtained through the sale of the Gregg's property seized pursuant to the Sequestration Order. In contrast, Chrysler merely held cross-claimant's property pursuant to a Sequestration Order in an action by the United States. Moreover, whereas the plaintiff in *Gregg* had complete ownership and use of the amounts it received from the sale of the defendant's property, Chrysler was constrained by the Sequestration Order. It did not have funds at its disposal to freely invest for its own purposes, but rather, it merely deposited the dividend payments in a non-interest bearing checking account. Also, the defendant in *Gregg* had no say in the use and investment of the money by plaintiff; in this case, Stone could have requested either payment to the sequestrator or investment of the sums at

---

12. Stone could not press this claim against AVCO or Consolidated since there is no question that they did not benefit from failing to invest the debenture interest.

any time. Instead, for more than six years Stone made no effort to communicate with Chrysler or its attorneys.

Although it is assumed for this motion that Chrysler did receive a benefit, it cannot be convincingly argued—and Stone does not do so—that the retention of the benefit would be unjust. The record indicates that shortly before the date on which each dividend payment was due, Chrysler deposited in a checking account kept for the purpose of paying dividends on its stock, funds sufficient to meet its dividend obligations. It did not, as far as the record shows, set up a separate account for the sums being withheld from Stone, nor did it take credit for those sums. Furthermore, at no time pertinent to this motion did Chrysler invest the dividends withheld from her. These facts must be considered in light of the fact that there is no suggestion in the record that Stone made even cursory inquiries concerning her property during the period in which Chrysler deposited the dividend payments in its checking account. In the circumstances equity and good conscience do not require restitution.

An order will be entered granting cross-defendants' motion for summary judgment.